**Ex Parte Joseph BROWN.**

**No. 2–92–182–CR.**

Court of Appeals of Texas,
Fort Worth.

Oct. 20, 1992.

Discretionary Review Granted
Jan. 27, 1993.

J.E. Brownlee, Denton, for appellant.

Bruce Isaacks, Crim. Dist. Atty., and Kathleen A. Walsh, Asst., Denton, for appellee.

Before HILL, FARRIS and LATTIMORE, JJ.

## OPINION

LATTIMORE, Justice.

This is an appeal from the trial court's denial of the relief requested in Brown's Application for Writ of Habeas Corpus based on a claim of double jeopardy.

We affirm.

On Monday, March 30, 1992, Brown's case was called for trial and a jury was seated and sworn by the court. However, because of the late hour, the proceedings were recessed until the following morning. On Tuesday, March 31, the court again called this case for trial. At that time, the State announced ready but Brown requested that the trial be continued until the following day. Brown's counsel had become ill during the night causing him to believe that he could not properly represent Brown in trial that day. The court agreed to continue the case until the next day, Wednesday, April 1. The State then informed the court that it had intended to call an unsubpoenaed witness, Dr. Balsley, that afternoon who would otherwise be unavailable until the following Monday, April 6.

Recognizing that jeopardy had attached by this point, the court suggested three options to the parties: (1) the entire case could be continued until Monday, April 6; (2) Brown could make a motion for mistrial; or (3) beginning Wednesday, April 1, both parties could present the evidence then available and then recess until Monday, April 6, to complete the trial with Dr. Balsley's testimony. Brown then informed the court that one of its subpoenaed witnesses, Lorna Beasley, would be out of the country for business and vacation purposes beginning Thursday, April 2, and continuing through April 20. Because Brown did not wish to seek a mistrial, the parties agreed to begin presenting evidence on Wednesday, April 1, and then conclude on the following Monday, April 6.

The next morning, Wednesday, April 1, the court again called the case for trial but the State announced that it was not ready after learning that witness Beasley planned to be out of the country during the trial. The State had intended to call Beasley to testify during its case in chief. Over Brown's objection, the court sua sponte declared a mistrial on the ground of manifest necessity.

The case was then set for trial on Monday, May 11, 1992. Shortly before the second trial, Brown filed an Application for Writ of Habeas Corpus claiming that his retrial was barred by double jeopardy. This appeal was taken from the trial court's denial of the relief requested in that writ.

### Point of Error

In his sole point of error, Brown contends that the trial court erred in denying

the relief requested in his Application for Writ of Habeas Corpus based on a claim of double jeopardy. Specifically, the issue presented is whether the trial judge abused his discretion in sua sponte declaring a mistrial on the ground of manifest necessity.

Since Brown relies on the double jeopardy clauses of both the United States and Texas Constitutions and a similar provision in the Texas Code of Criminal Procedure,[1] we should first consider whether the Texas Constitution grants Brown any rights greater than those afforded under our federal constitution. *See Heitman v. State,* 815 S.W.2d 681, 690 (Tex.Crim.App.1991). Our study reveals that the court of criminal appeals did not distinguish the constitutional provisions when previously addressing a similar double jeopardy claim. *See Torres v. State,* 614 S.W.2d 436, 438 (Tex. Crim.App. [Panel Op.] 1981). Furthermore, Brown did not present any argument that a distinction should be made in this case. As such, we may rely on federal and state authority in disposing of Brown's claim.[2]

■ Under the Fifth Amendment, the long-established standard for appellate review is that the trial courts have the discretion to declare a mistrial without the defendant's consent:

> [W]henever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances which would render it proper to interfere. To be sure, the power ought to be used with greatest caution, under urgent circumstances, and for very plain and obvious causes. . . .

*United States v. Perez,* 22 U.S. (9 Wheat) 579, 580, 6 L.Ed. 165, 165 (1824). Such a rule defies any mechanical formula by which to judge the propriety of declaring a mistrial in the varying and often unique situations arising during the course of a criminal trial. *Illinois v. Somerville,* 410 U.S. 458, 462, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425, 429 (1973). Nonetheless, the question of what constitutes manifest necessity is answered more easily in some kinds of cases than in others. *Arizona v. Washington,* 434 U.S. 497, 507, 98 S.Ct. 824, 831, 54 L.Ed.2d 717, 729 (1977). When the basis for the mistrial is the unavailability of critical prosecution evidence, the strictest scrutiny is appropriate in reviewing the trial court's action. *Id.* at 508, 98 S.Ct. at 832, 54 L.Ed.2d at 730.

■ It is upon this foundation, which endorses broad judicial discretion, that Texas courts have addressed the propriety of a trial judge's decision to sua sponte declare a mistrial on the ground of manifest necessity. Although each case must turn on its own facts, *Downum v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963), the determination of whether a trial judge exercised sound discretion normally requires the trial judge to consider less drastic alternatives to a mistrial and he must give adequate consideration to the defendant's double jeopardy right before declaring a mistrial. *Torres,* 614 S.W.2d at 442. In the instant case, after having seated the jury two days earlier, the trial court was faced with another delay because witness Beasley was to be out of the country beginning Thursday, April 2.[3] Beasley, a chemist with the Department of Public Safety, had tested the evidence obtained from the victim, and had taken a blood sample from Brown. Thus, her testimony

---

1. The specific provisions are: U.S. Const. amend. V; Tex.Const. art. 1, § 14; Tex.Code Crim. Proc.Ann. art. 1.10 (Vernon 1977).

2. In a recent opinion, the court of criminal appeals followed reasoning similar to ours in deciding not to distinguish between U.S. Const. amend. IV, and Tex.Const. art. 1, § 9, for purposes of their analysis in that case. *See Santikos v. State,* 836 S.W.2d 631, 632 n. 1 (Tex.Crim. App.1992) (opinion on reh'g).

3. An affidavit of Lorna Beasley offered by the State indicates that the purpose of her being out of the country was to lecture at the Swedish Narcotics Officer Association. She also considered the trip as a vacation. The trip had been planned approximately six months earlier and the tickets were nonrefundable.

was crucial to the State's case. In addressing its options at this juncture, the trial judge stated:

I could say, we are going to complete the trial right now. We'll just discount any problems that the State has and just forge on and have this trial. I can't in good conscience force the State to do that. I think it would work great injustice upon the State considering the circumstances here.

The other alternative, of course, would be to continue it until probably at the earliest April the 27th. We have had that jury under the Court's control basically from the date of—I guess March the 30th is the date that they were selected, which would be basically over a month really if we started back on the 27th. There's so much that could happen to to [sic] jurors in cases within that period of time that even though it is a potential answer to the problem, it doesn't appear to the Court to be the correct one.

And the third alternative ... of course, is in my discretion to determine whether there's a manifest necessity to mistry this case and discharge this jury and reset this case for another date at another time and select another jury. And I'm very strongly leaning in that—in the direction of that alternative. And I've strongly considered this because I don't take it lightly. I understand fully the importance of the double jeopardy provision of the constitution and the very guarded manner in which the courts, including the appellate courts and the Supreme Court of the United States, attempt to enforce that right accorded to—to defendants; but is not without exception.

■ Under the abuse of discretion test set forth in *Torres*, this statement by the

trial judge shows that he expressly considered less drastic alternatives to a mistrial and he gave adequate consideration to Brown's double jeopardy right.[4] *See Torres*, 614 S.W.2d at 442. Although we are without authoritative guidance on what constitutes a "less drastic alternative" under the circumstances facing this trial judge, he considered the only other alternatives that come to our mind. The trial judge did not abruptly discharge the jury, but rather considered his other alternatives, including a continuance. *See United States v. Jorn*, 400 U.S. 470, 487, 91 S.Ct. 547, 558, 27 L.Ed.2d 543, 557–58 (1971).[5]

Moreover, we are satisfied there was a "high degree" of "necessity" for declaring a mistrial. *See Arizona*, 434 U.S. at 506, 98 S.Ct. at 831, 54 L.Ed.2d at 729; *Ex parte Moore*, 695 S.W.2d 715, 719 (Tex. App.—Austin 1985, no pet.). This "necessity" arose not solely from the unavailability of witness Beasley, but rather from the combination of problems confronting this particular trial judge. *Arizona*, 434 U.S. at 506, 98 S.Ct. at 830–31, 54 L.Ed.2d at 728. Thus, we find on this record that, even under the strict review required by *Arizona*, the trial judge exercised sound discretion in declaring a mistrial based on manifest necessity.

Of the cases cited by Brown in his brief, only two are factually similar to the instant case in that the absence of a prosecution witness was a factor in the trial judge's declaration of a mistrial. *See Downum*, 372 U.S. at 735, 83 S.Ct. at 1034, 10 L.Ed.2d at 102; *Ex parte Moore*, 695 S.W.2d at 716. Therefore, we believe it beneficial to the jurisprudence of this state to distinguish the cases relied upon by Brown.

In *Downum*, the jury first selected and sworn to try the defendant was discharged because a prosecution witness had not been served with a summons and no other ar-

---

**4.** We disagree with Brown's assertion that the trial judge's statement was merely "lip service" offered to satisfy the valuable constitutional protection against double jeopardy. Instead, the statement showed his thoughtful consideration of Brown's rights and the importance of his ruling.

**5.** In *Illinois*, 410 U.S. at 469, 93 S.Ct. at 1073, 35 L.Ed.2d at 434, the Court described the action by the trial judge in *Jorn* as "erratic." The trial record of the instant case discloses the thoughtful consideration the trial judge gave to each alternative thereby distinguishing his action from that of the trial judge in *Jorn*.

rangements had been made to assure his presence. *Downum*, 372 U.S. at 737, 83 S.Ct. at 1035, 10 L.Ed.2d at 103. Under those circumstances, the Supreme Court sustained the defendant's plea of double jeopardy. *Id.* at 738, 83 S.Ct. at 1036, 10 L.Ed.2d at 104. However, the Court refused to say that the absence of a witness can never justify discontinuance of a trial. *Id.* at 737, 83 S.Ct. at 1035, 10 L.Ed.2d at 103. In the instant case, although one of the factors leading to the termination of the trial was the absence of a prosecution witness, that witness's absence was not due to any oversight by the State. Rather, it was the result of a series of problems beginning on Tuesday, March 31, the day the case was first called for trial following jury selection. On that Tuesday, the case was first delayed because Brown's counsel had become ill the previous night. While we recognize that illness was beyond the control of Brown's counsel, we do not believe that the State's case should ultimately be harmed by that first delay which disturbed the timing of the trial and resulted in witness Beasley being unavailable.[6]

In *Moore*, after the State had already put on three witnesses, it informed the trial court that its last witness was not present to testify. *Ex parte Moore*, 695 S.W.2d at 716. The court recessed the trial until the following morning. *Id.* When the witness had still not appeared the next morning the court entered the following order:

> THE COURT: All right, I will discharge the jury. I don't know whether or not I have the authority to declare a mistrial, but I will declare a mistrial at this time, give both sides an opportunity to brief the question, and if I have the authority to grant a mistrial and allow the State to retry, I will do that, and you can present a brief on the question.

*Id.* at 718. In comparison to the instant case, the State did not begin presenting evidence knowing that a crucial witness would be absent. The record discloses that if the trial had begun on Tuesday, March

31, Lorna Beasley would have been available to testify. Unlike the missing witness in *Moore*, witness Beasley's absence was the direct result of an initial delay caused by Brown's own counsel. Furthermore, from the quoted passage, it is clear that the trial judge in *Moore* did not give adequate consideration to the defendant's right against double jeopardy before declaring a mistrial. In the instant case, the trial judge expressly considered less drastic alternatives to a mistrial and he gave adequate consideration to Brown's double jeopardy right before declaring a mistrial. *See Torres*, 614 S.W.2d at 442.

By affirming the trial judge's action, we do not hold that the absence of critical prosecution evidence, such as witness Beasley's testimony, will always constitute a manifest necessity for declaring a mistrial. Rather, we hold that under the circumstances facing this trial judge, he soundly exercised his discretion in declaring a mistrial on that basis. Thus, Brown's constitutional right to be free from twice being placed in jeopardy was not violated.

The denial of the relief requested in Brown's Application for Writ of Habeas Corpus is affirmed.

---

**6.** The factors the trial judge was faced with regarding the illness of Brown's counsel were that: (1) counsel appeared in court on Tuesday, March 31, to seek a one day continuance instead of phoning or sending another attorney in his place; and (2) counsel knew when he sought this continuance that witness Beasley would be unavailable as of Thursday, April 2.