Ex Parte Joseph BROWN, Appellant,

v.

The STATE of Texas, Appellee.

No. 1583–92.

Court of Criminal Appeals of Texas,
En Banc.

Sept. 13, 1995.

Discretionary Review Denied Oct. 11, 1995.

J.E. Brownlee, Denton, for appellant.

Bruce Isaacks, District Attorney, Kathleen A. Walsh, Assistant District Attorney, Robert Huttash, State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

BAIRD, Judge.

Appellant's trial ended when the trial judge *sua sponte* declared a mistrial over appellant's objection. Shortly before the second trial, appellant filed an application for writ of habeas corpus claiming retrial would violate the Constitutional prohibition against double jeopardy. U.S. Const., art. V. The habeas judge denied relief and the Court of Appeals affirmed. *Ex parte Brown*, 839 S.W.2d 164 (Tex.App.—Fort Worth 1992). We granted appellant's petition for discretionary review to determine an important question of state or federal law which has not been, but should be, settled by this Court.

Tex.R.App.P. 200(c)(2).[1]  We will grant relief.

## I.

On Monday, March 30, 1992, appellant's case was called for trial and a jury was impaneled and sworn. Due to the lateness of the hour, the trial was continued until the following day. But, on Tuesday, March 31st, appellant's counsel became ill and the trial was continued until, Wednesday, April 1, 1992. Prior to the continuance, however, appellant informed the trial judge that defense witness, Lorna Beasley, a Department of Public Safety chemist, would be unavailable from April 2nd through the 20th.[2]  In resolving the problem of Beasley's unavailability, the following conversation ensued between the trial judge and the parties:

> The Court: Well, let me state this. Now, is this going to be your witness, [appellant's counsel], the one you are talking about?
>
> Appellant: I have subpoenaed her, Your Honor, and had her served.
>
> The State: I anticipate also placing her in my case in chief, Your Honor.
>
> The Court: Well, see, we won't be getting started until Wednesday. Somebody may not be able to release her once we

get started—well, anyway, that's neither here nor there.

> Is there any possibility of us going ahead and starting tomorrow assuming [appellant's counsel] is—is well enough to proceed, getting as much evidence as we have on or can get on, and then recessing it at that point and coming back Monday?
>
> The State: That's agreeable, Your Honor.
>
> The Court: Would that be agreeable, [appellant's counsel]?
>
> Appellant: Yes, Your Honor.

The trial judge then ruled that the State would begin to present its evidence April 1st. Both sides agreed and announced ready.

On Wednesday, April 1st, the State announced it was *not* ready to proceed. The State claimed that although Beasley was presumably able to testify on April 1st, the State's ability to proceed had been "gutted or prejudiced" by the one-day delay caused by the illness of appellant's counsel. The prosecutor further contended that, although she was prepared to file a motion for continuance, she had decided against doing so, stating, "I think that gives too much time for something to happen to this jury; illnesses or weddings or vacation or whatever. Or it gives too much time for things to—to go

---

1. Appellant's Petition for Discretionary Review raises four grounds for review. We granted review on all four grounds:

   (1) Did the Court of Appeals err in ruling that the trial judge did not abuse its discretion in declaring a mistrial on grounds of "manifest necessity" over defense counsel's objection, where a witness subpoenaed by the defense could not appear for trial on the date desired by the State?

   (2) Where defense counsel specifically agrees to allow a witness to be taken out of order as an alternative to the granting of a mistrial, is the prosecutor's objection that she does not "trust" defense counsel a sufficient reason for the trial judge to reject that option?

   (3) Where defense counsel specifically agrees to allow the witness's supervisor to testify and sponsor the records the State deems "material" to its case (records the State indicates the witness was needed to sponsor) as an alternative to the granting of a mistrial, is the prosecutor's objection that she does not "trust" defense counsel enough to convince the prosecutor that counsel would not later renege on his word at trial and not object at trial

when the records were offered, sufficient reason for the trial judge to reject that option?

   (4) Whether the option of having the trial continued for several weeks can be rejected by the trial court in favor of immediate mistrial because of theoretically possible problems which might arise in future, such as juror illness?

2. Also, the State announced that one of its witnesses, Dr. Balsley, would be unable to testify for the remainder of the week. The trial judge resolved this problem by ruling that the State would begin presenting its case on April 1st and then grant a continuance for the remainder of the week until April 6th, when Dr. Balsley would be available to testify. The State agreed to this arrangement. Therefore, while the Court of Appeals considered Dr. Balsley as one of the "combination of problems," *Brown*, 839 S.W.2d at 167, facing the trial judge when deciding whether to grant a mistrial, we find that the problem associated with Dr. Balsley had been resolved and is not before us.

wrong." The trial judge then raised the subject of manifest necessity:

> The Court: All right. So let me ask you this. Is the State indicating to the—to the Court that there's a manifest necessity that the Court grant a mistrial in this?
>
> The State: I think the Court has the authority to do it, and I think this situation—these facts fall within the Court's discretion under that standard, yes, sir.
>
> The Court: So it's the State's position— one further question—that the Court would be justified in doing that?
>
> The State: I think the Court would be justified. I want the record to be very clear that the State is not urging the mistrial, but we support the Court's position that the Court may do so.[3]

When the prosecutor represented that defense witness Beasley's testimony was vital to the State's case, appellant offered to allow Beasley to testify out of sequence, or, in the alternative, to allow Beasley's supervisor, Manuel Valadez, to testify in Beasley's stead. The prosecutor opposed each alternative, contending that allowing Beasley to testify out of sequence was unacceptable because it "would require us to trust [appellant's counsel] when he says he will allow that[.]" The prosecutor further contended that allowing Valadez to testify instead of Beasley

> ... would require the defense not to object if we called Manuel Valadez. I don't trust [appellant's counsel]. I don't trust him to stand before the Court and say he's not going to object and get in the middle of the trial and then object. I just want—don't want to place any amount of trust in his representation to the State that he won't do that so that's not an alternative.

Declining to either proceed with the trial or continue the trial, the trial judge declared a mistrial on the grounds of manifest necessity over appellant's objection.

Appellant's case was re-scheduled for trial on May 11, 1992. Before the second trial,

appellant filed an application for Writ of Habeas Corpus contending his right against double jeopardy would be violated by the second trial. The habeas judge denied relief and appeal was taken to the Court of Appeals.

## II.

In affirming the denial of relief, the Court of Appeals held the complications facing the trial judge amounted to a " 'high degree' of 'necessity' for declaring a mistrial." *Brown*, 839 S.W.2d at 167 (citing *Arizona v. Washington*, 434 U.S. 497, 506, 98 S.Ct. 824, 831, 54 L.Ed.2d 717 (1978)). The Court of Appeals further held the trial judge considered "less drastic alternatives" before granting the mistrial:

> ... [The record] shows that [the trial judge] expressly considered less drastic alternatives to a mistrial and he gave adequate consideration to Brown's double jeopardy right ... *Although we are without authoritative guidance on what constitutes a "less drastic alternative" under the circumstances facing this trial judge, he considered the only other alternatives that come to our mind.* The trial judge did not abruptly discharge the jury but rather considered *his other alternatives, including a continuance*....[4]

*Brown*, 839 S.W.2d at 167.

We granted review to determine an important question of state or federal law which has not been, but should be, settled by our Court. Tex.R.App.P. 200(c)(2). *See*, n. 1, *supra.*

## III.

### A.

▪ The Fifth Amendment to the United States Constitution prohibits a State from twice putting a defendant in jeopardy for the same offense. *Arizona v. Washington*, 434 U.S. 497, 503, 98 S.Ct. 824, 829 (1978); *Ex parte Little*, 887 S.W.2d 62, 64 (Tex.Cr.App. 1994); *Alvarez v. State*, 864 S.W.2d 64, 65

---

3. Even though the prosecutor did not request the mistrial, the record indicates she presented the trial judge with case law concerning manifest necessity prior to these proceedings.

4. All emphasis is supplied unless otherwise indicated.

(Tex.Cr.App.1993); *and, Harrison v. State,* 788 S.W.2d 18, 21 (Tex.Cr.App.1990). Jeopardy attaches when a jury is impaneled and sworn. *Crist v. Bretz,* 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978); *Downum v. United States,* 372 U.S. 734, 735–736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963); *Little,* 887 S.W.2d at 64; *and, State v. Torres,* 805 S.W.2d 418, 420 (Tex.Cr.App.1991). Consequently, as a general rule, if, after the defendant is placed in jeopardy, the jury is discharged without reaching a verdict, double jeopardy will bar retrial. *Green v. United States,* 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957); *Wade v. Hunter,* 336 U.S. 684, 688, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949); *and, Alvarez,* 864 S.W.2d at 65. "An exception to this rule is made if the defendant consents to a retrial, or if a retrial before a new judge is mandated by some form of manifest necessity." *Torres v. State,* 614 S.W.2d 436, 441 (Tex.Cr.App.1981) (citing *Arizona v. Washington,* 434 U.S. at 505, 98 S.Ct. at 830; *and, Illinois v. Somerville,* 410 U.S. 458, 461, 93 S.Ct. 1066, 1069, 35 L.Ed.2d 425 (1973)). Thus, where manifest necessity exists to declare a mistrial, the constitutional prohibition against double jeopardy is not implicated and retrial is permitted. *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087, 72 L.Ed.2d 416 (1982); *United States v. Perez,* 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Alvarez,* 864 S.W.2d at 65; *and, Harrison,* 788 S.W.2d at 21–22. Although the Supreme Court has declined to formulate precise rules based on categories of circumstances in which manifest necessity exists, *see, United States v. Jorn,* 400 U.S. 470, 480, 91 S.Ct. 547, 555, 27 L.Ed.2d 543 (1971), a trial judge's discretion to declare a mistrial based on manifest necessity is limited to "very extraordinary and striking circumstances...." *Downum,* 372 U.S. at 736, 83 S.Ct. at 1034. Circumstances in which the Court has found manifest necessity existed to discharge a jury without the defendant's consent have included: where a jury is unable to arrive at a verdict after considerable deliberation, *Perez,* 22 U.S. 579; *and, Logan v. United States,* 144 U.S. 263, 12 S.Ct. 617, 36 L.Ed. 429 (1892); where bias of a juror is discovered after jeopardy attaches, *Simmons v. United States,* 142 U.S. 148, 12 S.Ct. 171,

35 L.Ed. 968 (1891); *and, Thompson v. United States,* 155 U.S. 271, 15 S.Ct. 73, 39 L.Ed. 146 (1894); and where tactical necessity on the battlefield necessitates moving the tribunal, *Wade v. Hunter,* 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Additionally, in *Alvarez v. State,* 864 S.W.2d 64, we held there was manifest necessity to declare a mistrial where errors made during voir dire would have automatically resulted in reversal on appeal. *Id.,* at 66 (citing *Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070). Thus, as a general rule, manifest necessity exists where the circumstances render it impossible to arrive at a fair verdict, where it is impossible to continue with trial, or where the verdict would be automatically reversed on appeal because of trial error.

### B.

Despite a trial judge's discretion in declaring a mistrial based on manifest necessity, the trial judge is required to consider and rule out "less drastic alternatives" prior to granting a mistrial. *Little,* 887 S.W.2d at 66; *Harrison,* 788 S.W.2d at 22; *and, Torres,* 614 S.W.2d at 442. Thus, prior to granting a mistrial based on manifest necessity, the trial judge must review the alternative courses of action and choose the one, which, in light of all the circumstances, best preserves the defendant's "right to have his trial completed before a particular tribunal." *Harrison,* 788 S.W.2d at 23–24. Where a trial judge grants a mistrial despite the available option of less drastic alternatives there is no manifest necessity and we will find an abuse of discretion. *Little,* 887 S.W.2d at 66; *and, Harrison,* 788 S.W.2d at 23–24. We have, in fact, held on a number of occasions that no manifest necessity existed where the trial judge failed to consider less drastic alternatives to the mistrial. *See, Harrison, supra; Torres, supra; Little, supra; and, Ex parte Hubbard,* 798 S.W.2d 798 (Tex.Cr. App.1990).

In *Harrison,* we held there was no manifest necessity to declare a mistrial after the defendant's counsel interjected his personal knowledge into the case. *Id.,* 788 S.W.2d at 24. During Harrison's first trial, his counsel cross-examined a State witness with personal

observations made the night of Harrison's arrest. The State moved to disqualify Harrison's counsel because he had "made himself a fact witness" in the case. The trial judge initially refused to disqualify counsel but agreed to declare a mistrial when the State threatened to call counsel as a witness. *Id.,* at 21. On retrial, Harrison pled guilty after the trial judge refused his plea of double jeopardy.

In reviewing the record to determine whether there was manifest necessity to support the trial judge's decision, we observed

> the trial judge in the instant case gave no consideration to any less drastic alternatives such as an instruction to disregard. In a case like the instant one where the issue is of minor significance to the case, consideration of lesser alternatives is certainly most important when weighing a defendant's double jeopardy right along with such considerations.

*Id.,* at 23. Thus, because the trial judge failed to consider less drastic alternatives to declaring a mistrial, we held the trial judge had abused his discretion in declaring a mistrial based on manifest necessity. Consequently, Harrison's second trial was jeopardy barred. *Id.,* at 24.

In *Torres,* 614 S.W.2d 436, the trial judge granted a mistrial on the belief that a witness had been intimidated to testify falsely. On retrial, the trial judge overruled Torres' plea of double jeopardy and Torres pled guilty to a lesser included offense. We held Torres' right against double jeopardy was violated because there was no evidence to conclude that the witness had actually been intimidated, and *"[t]he trial judge gave no consideration to any less drastic alternatives or to the double jeopardy right of [Torres]; the record does not reveal the manifest necessity for a mistrial." Id.,* at 443.

In *Ex parte Hubbard,* 798 S.W.2d 798, the indictment charged the defendant with two misjoined offenses. Hubbard moved to compel the State to elect between the offenses after the jury was impaneled. In response, the State moved to dismiss the jury because they had been informed of both offenses

during voir dire. *Id.,* at 799. The trial judge granted the State's motion and declared a mistrial. We held there was no manifest necessity for the mistrial because there was an alternative available to dismissing the jury, namely, the State could have elected between the counts. *Id.* at 800.

Finally, in *Little,* although the jury was empaneled and sworn, due to the lateness of the hour, trial on the merits did not commence until the following day. *Id.,* 887 S.W.2d at 63. On the morning trial on the merits was to commence, one juror failed to arrive on time. After waiting approximately three hours, the trial judge declared a mistrial based on manifest necessity. *Id.,* at 63–64. In reviewing the record, we noted that the trial judge failed to consider a number of alternatives in lieu of declaring a mistrial, including granting a continuance or issuing a writ of attachment. *Id.,* at 66–67. We concluded that because the trial judge failed to consider and rule out the less drastic alternatives to a mistrial, the record did not support his finding of manifest necessity existed and consequently, the trial judge abused his discretion. *Id.,* at 67.

But while consideration of less drastic alternatives is necessary, it is not, by itself, sufficient. The import of *Harrison* is not simply that a trial judge make a perfunctory recitation of the alternatives before granting a mistrial, but that he carefully and deliberately consider which of all the alternatives best balances the defendant's interest in having his trial concluded in a single proceeding with society's "interest in fair trials designated to end in just judgements." *Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 836 (quoting *Hunter,* 336 U.S. at 689, 69 S.Ct. at 837). Otherwise, consideration of less drastic alternatives equates to little more than a *pro forma* exercise to mask the trial judge's preferred course of action. Accordingly, where the trial judge fails to explicitly or implicitly rule out a less drastic alternative in favor of granting a mistrial, he has abused his discretion. *Little,* 887 S.W.2d at 66; *Harrison,* 788 S.W.2d at 23–24; *and, Torres,* 614 S.W.2d at 442–443.[5]

---

5. Relying upon *Arcila v. State,* 834 S.W.2d 357, (Tex.Cr.App.1992), the dissent contends the court

## V.

### A.

■ With the foregoing in mind, we now turn to appellant's first ground for review in which appellant contends the trial judge abused his discretion in declaring the mistrial. *See,* n. 1, *supra.* On March 31st, the trial judge was faced with the fact that Lorna Beasley would be unavailable as of April 2nd. Although Beasley was subpoenaed by appellant, the State also intended to call Beasley as a witness. The record indicates that Beasley's importance to the State was based on certain forensic tests which she had conducted on evidence in the case and which the State intended to use in its case-in-chief. On March 31, the parties agreed to begin testimony on April 1st knowing Beasley would be unavailable from April 2nd through April 20th. The next day, however, the State reneged on the agreement. Appellant then offered two alternatives to accommodate the State: (1) allow Beasley to testify out of sequence; or (2) allow Beasley's supervisor, Manuel Valadez, to testify in her stead. The State argued against these alternatives.

At this point the trial judge considered granting a mistrial and addressed the alternatives as he saw them:

> I could say, we are going to complete the trial right now. We'll just discount any problems that the State has and just forge on and have this trial. I can't in good conscience force the State to do that. I think it would work great injustice upon the State considering the circumstances here.
>
> The other alternative, of course, would be to continue it until probably at the earliest April 27th. We have had that jury

under the Court's control basically from the date of—I guess March the 30th is the date that they were selected, which would be basically over a month really if we started back on the 27th. There's so much that could happen [to the] jurors in cases within that period of time that even though it is a potential answer to the problem, it doesn't appear to the Court to be the correct one.

> And the third alternative—if there's another one, it escapes me right now. The third alternative, of course, is in my discretion to determine whether there's a manifest necessity to mistry this case and discharge the jury and reset this case for another date at another time and select another jury. And I'm very strongly leaning in that—in the direction of that alternative. And I've strongly considered this because I don't take it lightly. I understand fully the importance of the double jeopardy provision of the constitution and the very guarded manner in which the courts, including the appellant courts and the Supreme Court of the United States, attempt to enforce that right accorded to—the defendants; but is not without exception. . . .
>
> . . . I feel in this case that there is a manifest necessity to mistry this case and proceed with it on another day at another time and perhaps with another jury.

The trial judge then granted a mistrial over appellant's objection.

In reviewing the trial judge's consideration of the less drastic alternatives, the Court of Appeals did not address the trial judge's failure to consider the alternatives proposed by appellant. *See, Brown,* 839 S.W.2d at

of appeals' analysis is sufficient, despite the court's failure to consider *Harrison, supra, Hubbard, supra,* and *Little, supra.* Dissenting Op., 907 S.W.2d at 844. The dissent, however, misreads *Arcila* to create a policy of legal deference, rather than factual deference, to the lower court. *See, id.,* 834 S.W.2d at 360. *Arcila* presumes, of course, that the lower court relied upon accurate and contemporary case law in arriving at its conclusion. Citing only *Torres,* the court of appeals acknowledged it was "without authoritative guidance on what constitutes a less drastic alternative." *Brown,* 839 S.W.2d at 167. However, in the decade since

*Torres* was decided, we have recognized that the determination of whether there is manifest necessity for a mistrial entails consideration of *all* the apparent less drastic alternatives before granting a mistrial. *Little,* 887 S.W.2d at 66–67. While *Arcila* may preclude a reviewing court from positing alternatives to a mistrial which were not raised before the trial judge, where the trial judge has been made aware of less drastic alternatives to a mistrial, yet fails to indicate why these alternatives have been rejected, the record simply does not support a finding of "manifest necessity." *Little,* 887 S.W.2d at 66.

166–167. While citing *Torres, supra* in noting that a trial judge must consider the less drastic alternatives to granting a mistrial, *Brown,* 839 S.W.2d at 166–167, the Court of Appeals neglected to consider our more recent decisions in *Harrison, supra* and *Hubbard, supra.* Moreover, the Court of Appeals did not have the benefit of our decision in *Little, supra* when it decided the instant case. Thus, the Court of Appeals' analysis of what constitutes a satisfactory consideration of less drastic alternatives is incomplete.

Moreover, it is evident that the Court of Appeals only nominally examined the trial judge's expressed rationale for declaring a mistrial. Although the trial judge considered proceeding with the trial on April 1st, as the parties originally agreed, he rejected that alternative because "it would work great injustice upon the State considering the circumstances...." The trial judge did not explain how commencing with the trial would disadvantage the State. Had the trial proceeded on April 1st, Beasley would have had a full day to testify. The State contended that Beasley testifying out of order would "hurt the State's ability to put on a coherent case before [the] jury." However, inasmuch as taking one witness out of sequence would interrupt the linear presentation of a party's case, such an situation hardly "defeats the ends of public justice" necessary to justify manifest necessity. *Perez,* 22 U.S. at 580. "[A] criminal trial is, even in the best of circumstances, a complicated affair to manage." *Jorn,* 400 U.S. at 479, 91 S.Ct. at 554. No criminal trial is flawless and it is *common* for the parties to call witnesses out-of-sequence depending on their availability. As a practical matter, a trial attorney must be prepared for unforeseen difficulties, including unavailable witnesses, and accommodate those difficulties as best as possible. Finally, under the circumstances in the instant case, allowing Beasley to testify on April 1st would have upset the sequential presentation of

both the State's case-in-chief, *and* appellant's case-in-chief.[6] Therefore, the trial judge's conclusion that proceeding with trial on April 1st would have *worked injustice upon the State* is not supported by the record. *See, Arizona v. Washington,* 434 U.S. at 516–517, 98 S.Ct. at 836.

### B.

The State contends, for the first time on appeal, that since Beasley was a material witness, it was necessary to have her available throughout the trial as a re-call witness to rebut evidence presented by appellant. State' Brief, pp. 12–13. There is a disagreement between the parties as to whether Beasley was actually material to the State's case since, as appellant notes, the State failed to subpoena her. Appellant's Brief, pp. 6–7. We find no merit in appellant's contention. Under the facts of this case, whether the State issued a subpoena for Beasley is irrelevant to whether she was "material" to the State's case. In *Erwin v. State,* 729 S.W.2d 709, 713 (Tex.Cr.App.1987), we held that because two parties may not subpoena the same witness, a subpoena inures to the benefit of both parties. Therefore, in the instant case, the State was entitled to rely upon appellant's subpoena of Beasley. *See also, Gentry v. State,* 770 S.W.2d 780, 785 (Tex.Cr.App.1988). Nevertheless, the State's failure to take steps to compel Beasley's attendance throughout trial seriously undermines the State's contention of Beasley's materiality.

While it is true that the State was entitled to rely on appellant's subpoena to compel Beasley's attendance at trial on April 1st, *Erwin,* 729 S.W.2d at 713, if the State believed Beasley was a material witness after April 1st, the State should have sought a writ of attachment. Tex.Code Crim.Proc.Ann. arts. 24.12 and 24.14.[7] *See also, Gentry,* 770

---

6. In light of the order of proceeding at trial under Tex.Code Crim.Proc.Ann. art. 36.01, we believe it is more likely that appellant's case would have been prejudiced by the accommodation than the State's case. The State merely faced taking Beasley's testimony out-of-sequence while appellant faced taking Beasley's testimony

not only out-of-sequence but prior to appellant's own case-in-chief.

7. Tex.Code Crim.Proc.Ann. art. 24.14 states:
When a witness resides in the county of the prosecution, *whether he has disobeyed a subpoena or not* ... upon the filing of an affidavit with the clerk by the defendant or State's

S.W.2d at 785, *and Erwin,* 729 S.W.2d at 713. Although in general an attachment will not issue until a witness disobeys a subpoena, *Boyle v. State,* 820 S.W.2d 122, 128 (Tex.Cr. App.1989), art. 24.14

> authorizes the issuance of an attachment for a resident witness *prior to the disobedience of a subpoena.* But, in order to obtain such an attachment the party requesting the attachment must file "an affidavit with the clerk ... [stating] that he has good reason to believe, and does believe, that such witness is a material witness, and is about to move out of the county...."

*Gentry,* 770 S.W.2d at 786 (quoting Tex.Code Crim.Proc.Ann. art. 24.14). The State made no attempt to compel Beasley's attendance after April 1st, even though it knew in advance that Beasley would be leaving the country on April 2nd. Thus, the situation is analogous to one in which the State failed to subpoena a witness. Both the United States Supreme Court and our Court have addressed the issue of the State's failure to subpoena a material witnesses and have held that this is not a ground for mistrial based on manifest necessity. *See generally, Downum v. United States,* 372 U.S. at 737–738, 83 S.Ct. at 1035–1036; *Ex parte Myers,* 618 S.W.2d 365, 369 (Tex.Cr.App.1981), *and McClendon v. State,* 583 S.W.2d 777, 780.

### C.

█ Furthermore, in upholding the decision to grant a mistrial, the Court of Appeals did not consider the trial judge's failure to address appellant's offer to allow Beasley's supervisor, Valadez, to testify in her stead. The State rejected appellant's offer, contending that allowing Valadez to sponsor Beasley's test results violated the rules of evidence and left the State open to objection by appellant. *See, Cole v. State,* 839 S.W.2d 798, 806–810 (Tex.Cr.App.1990) (Op. on reh'g) (Prosecutorial nature of DPS precluded supervisor of absentee chemist from sponsoring test records under Tex.R.Crim.Evid.

803(8)(B)). The record indicates, however, that appellant implicitly agreed to waive any objections to Valadez testifying. *See, Newton v. State,* 150 Tex.Crim. 500, 202 S.W.2d 921, 924 (App.1947), *and, Terwillinger v. State,* 149 Tex.Crim. 79, 191 S.W.2d 481, 483 (App.1946) (a defendant may waive any right except the right to trial by jury in a capital case). Since appellant's offer with regard to Valadez waived the evidentiary error resulting from Valadez's testifying, the case was not subject to automatic reversal on appeal. *See, Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070. Moreover, permitting Valadez to testify in the place of Beasley would have obviated the problems faced by the State because of Beasley's unavailability. Certainly, allowing Valadez to testify was a less drastic alternative to declaring a mistrial. However, even though the trial judge was undoubtedly aware of this alternative, he failed to explain why it was not preferable to a mistrial. *See, Little,* 887 S.W.2d at 66; *Harrison,* 788 S.W.2d at 23–24; *and, Torres,* 614 S.W.2d at 442. Moreover, in reviewing the trial judge's decision, the Court of Appeals did not address the trial judge's failure to consider and rule out this alternative.

### VI.

The record clearly reveals two less drastic alternatives which were available to the trial judge in lieu of a mistrial: (1) Beasley was available to testify out-of-sequence on April 1 and could have been compelled by writ of attachment to remain throughout the trial, or (2) Valadez could have testified in Beasley's stead. The trial judge *was aware of these alternatives* but neglected to address them. Moreover, the Court of Appeals did not address the trial judge's failure to consider and rule out these alternatives. Because less drastic alternatives were available, the record does not support the trial judge's conclusion that there was manifest necessity for a mistrial.[8] *Little,* 887 S.W.2d at 66–67; *Harrison,* 788 S.W.2d at 23; *Hubbard,* 798

---

counsel, that he has good reason to believe, and does believe, that such witness is a material witness, and is about to move out of the county, the clerk shall forthwith issue an attachment for such witness....

8. Having found that the trial judge abused his discretion in declaring a mistrial, we need not address appellant's remaining grounds for review.

S.W.2d at 800; *and, Torres,* 614 S.W.2d at 442–443.

We hold that because less drastic alternatives were available, there was no manifest necessity to declare a mistrial. Therefore, the trial judge necessarily abused his discretion in declaring a mistrial. Accordingly, appellant's retrial is jeopardy barred. The judgment of the Court of Appeals is reversed, and the case is remanded to the trial court to enter an order discharging appellant and barring any reprosecution for the same offense. *Little,* 887 S.W.2d at 67–68.

McCORMICK, P.J., and WHITE, J., dissent.

MANSFIELD, Judge, dissenting.

The court of appeals found that the judge presiding over appellant's first trial did not abuse his discretion by *sua sponte* granting a mistrial and, therefore, that appellant's retrial did not violate his double jeopardy rights. *Ex parte Brown,* 839 S.W.2d 164 (Tex.App.— Fort Worth 1992). I believe that this holding is "a conclusion adequately supported by the law and the evidence." *Arcila v. State,* 834 S.W.2d 357, 361 (Tex.Crim.App.1992). Therefore, the proper action for this Court to take is to dismiss appellant's ground for review as improvidently granted. Because the majority insists on substituting its own judgment for one that is supported by the facts of this case and settled rules of law, I respectfully dissent.

In addressing appellant's claim below, the court of appeals carefully laid out the applicable case law from the United States Supreme Court and from the Texas appellate courts. This analysis included a review of all of the proper legal standards necessary for an appellate court to determine whether a trial judge abused his discretion by granting a mistrial based upon manifest necessity. Most importantly, the court of appeals properly recognized the following: first, the propriety of granting a mistrial will turn on the facts of each particular case; second, there exists no "mechanical formula by which to judge the propriety of declaring a mistrial"; and third, in reaching his decision, the trial judge must exercise sound discretion, which necessitates that he consider both the defendant's double jeopardy rights and whether there are less drastic alternatives to declaring a mistrial.[1] *Ex Parte Brown,* 839 S.W.2d at 166.

The majority's sole complaint about the legal standards applied by the court of appeals is that they did not include this Court's decisions in *Harrison v. State,* 788 S.W.2d 18 (Tex.Crim.App.1990), *Ex Parte Hubbard,* 798 S.W.2d 798 (Tex.Crim.App.1990), and *Ex parte Little,* 887 S.W.2d 62 (Tex.Crim.App. 1994). The facts in those cases, however, are clearly distinguishable from those in the instant case. Specifically, in all three cases, we found the trial court abused its discretion because there was no evidence that the trial court considered any less drastic alternatives to declaring a mistrial. In contrast, the judge presiding over appellant's trial clearly enumerated and considered less drastic alternatives before deciding to declare a mistrial. Because of this critical distinction, the cases cited by the majority are not on point, and the court of appeals based its decision upon the proper legal precedent.[2]

The conclusion reached by the court of appeals is also adequately supported by the evidence in the case. Specifically, the record shows that the trial judge did expressly consider the alternatives of requiring the State to proceed without its witness or of granting a continuance of nearly four weeks. The trial judge also expressly noted his concern

1. The majority notes:

> ... as a general rule, manifest necessity exists where the circumstances render it **impossible** to arrive at a fair verdict, where it is **impossible** to continue on with trial, or where the verdict would be **automatically** reversed on appeal because of trial error.

Maj. op. at 839 (emphasis added). Although this is an accurate statement, I believe the majority should clarify that these extreme situations are not the only times manifest necessity exists. For instance, there are clearly situations in which, although it is not impossible to continue a trial, difficulties arise such that a trial judge may properly decide that there exists a manifest necessity to declare a mistrial.

2. Indeed, the court of appeals under no circumstances could have relied upon our holding in *Ex parte Little,* as that case was decided after the court below disposed of appellant's case.

for appellant's double jeopardy rights. This evidence provided the court of appeals an adequate basis for finding the trial judge did not abuse his discretion in finding manifest necessity to grant a mistrial.

The only complaint raised by the majority here is that, had they been sitting on the court of appeals, they would have held that the trial judge abused his discretion by not expressly considering additional alternatives to a mistrial. And yet, the threshold issue for this court to consider in deciding whether to exercise its discretionary review power is not whether we would have reached the same decision as the court of appeals. Rather, our role is to determine whether the opinion of the court of appeals "fairly addresses the issues raised on appeal, evaluates those issues according to settled rules of law, accounts for all evidence relevant to the questions presented, and reaches a conclusion adequately supported by the law and the evidence." *Arcila v. State,* 834 S.W.2d at 361. Because the opinion by the court of appeals meets all of these requirements, appellant's petition should be dismissed as improvidently granted. For that reason, and because the majority is ignoring its own dictates in *Arcila* so that it may substitute its judgment for that of the court of appeals, I dissent.

KELLER, J., joins.

