EX PARTE BROUSSARD

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO.  2-04-416-CR

EX PARTE 

JAMES DALE BROUSSARD 

------------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Introduction

In this appeal, we must decide whether double jeopardy bars retrial of a defendant where the trial court denies the defendant’s motion for mistrial due to alleged prosecutorial misconduct but later orders a mistrial because the jury is deadlocked.  We hold that, under the circumstances presented by this case, the answer is “no.”  Accordingly, we affirm the trial court’s denial of Appellant’s petition for writ of habeas corpus.

Procedural Background

Appellant was charged with indecent exposure and pleaded not guilty.  During the guilt/innocence phase of his jury trial, the police officer who arrested Appellant testified that he saw Appellant exposing his genitals from a certain vantage point outside Appellant’s pickup truck.  Appellant played a videotape for the jury that, according to Appellant,  suggested the officer’s vantage point would not have allowed him to see what he claimed to have seen.

When the trial broke for lunch, Ryan Calvert, an assistant district attorney but not the prosecutor trying the case, found Appellant’s truck in the parking lot and conducted an impromptu investigation to determine what he could see through the window from the vantage point of the arresting officer.  The prosecutor called Calvert to testify about his observations. 

Appellant objected that it was improper for a member of the prosecutor’s office to testify as a fact witness and that Calvert did not have “the legal capacity to be testifying in a case in which he closely is and has worked with the prosecution.”  The trial court overruled his objections and allowed Calvert to testify.  Appellant did not move for a mistrial at that time.  Later, the trial court allowed the jury to view Appellant’s pickup for themselves.

The case was submitted to the jury the next morning.  During its deliberations, the jury sent the following notes to the trial court:

JURY: There is a direct conflict between members of the jury as to [the arresting officer’s] testimony.  We would like to review his testimony regarding [Appellant’s] actions from the time [the officer] approached the truck and the time in which [Appellant] was placed in the police vehicle. 

COURT: Your request is very broad.  Please inform the Court as to the direct conflict, if any, between members of the jury concerning [the officer’s] testimony. 

JURY: Some jurors recollect [the officer] testifying only to [Appellant’s] penis in his hand.  Others recollect [the officer] stating that he saw the penis in the hand but saw [Appellant] tucking his penis in his pants and zipping the pants up.

At this point the jury was taken back to the courtroom and the court reporter read the relevant testimony to them.  The jury resumed its deliberations, then sent another note to the court:

JURY: The jury has reached an impasse and cannot render a unanimous verdict on the above-noted case. 

The judge called the jury back to the courtroom and read them an 
Allen
 charge.  
See  Allen v. United States
, 164 U.S. 492, 17 S.Ct. 154 (1896).  Again the jury resumed its deliberations.  An hour later, the jury again reported that it was at an impasse.  The trial court instructed the jury to go home and resume deliberations the next day. 

The next morning, Appellant moved for a mistrial based on prosecutorial misconduct—specifically, Calvert’s testimony two days earlier.  After noting that Calvert had not appeared on behalf of the State as a prosecutor in the case, the trial court denied his request for a mistrial. 

About an hour later, the jury sent another note to the judge:

JURY: After further deliberation and dissection of all evidence provided, the jury is split five to one, and each side maintains that changing its position in order to render a unanimous verdict would bring violence to good conscience. 

Over Appellant’s request that the court instruct the jury to continue deliberating, the trial court declared a mistrial and released the jury. 

Appellant then filed a petition for writ of habeas corpus in the trial court, claiming that double jeopardy barred his retrial because the mistrial was the result of prosecutorial misconduct.  After a hearing, the trial court found that Appellant “did not prove by a preponderance of the evidence that the manifestly improper prosecutorial misconduct, if any, provoked the mistrial” and denied habeas relief.  Appellant then filed this appeal.

Relevant Law

Both the Double Jeopardy Clauses of the Fifth Amendment to the United States Constitution and article I, section 14 of the Texas Constitution protect a criminal defendant from repeated prosecutions for the same offense.  
U.S. Const.
 amend. V; 
Tex. Const.
 art. I, § 14; 
Oregon v. Kennedy
, 456 U.S. 667, 671, 102 S. Ct. 2083, 2087 (1982); 
Ex parte Peterson
, 117 S.W.3d 804, 810 (Tex. Crim. App. 2003).
  Although a defendant has a “valued right to have his trial completed by a particular tribunal,” 
neither constitutional provision guarantees that the State “will vindicate its societal interest in the enforcement of the criminal laws in one proceeding.”  
Kennedy
, 456 U.S. at 671-72, 102 S. Ct. at 2087; 
Peterson
, 117 S.W.3d at 810.  Thus, double jeopardy principles do not forbid multiple trials of a single criminal charge if the first trial resulted in a mistrial that:  1) was justified under the manifest necessity doctrine; or 2) was requested or consented to by the defense, absent prosecutorial misconduct which forced the mistrial.  
Peterson
, 117 S.W.3d
 at 810-11.  One example of manifest necessity is when a mistrial is declared because the jury is unable to reach a verdict after considerable deliberation.  
Brown v. State
, 907 S.W.2d 835, 839 (Tex. Crim. App. 1995).

Double jeopardy 
bars a successive prosecution after a declaration of prosecutorial misconduct at the defendant’s request when the misconduct was intended to induce a motion for mistrial or when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant’s request.  
Bauder v. State
, 921 S.W.2d 696, 699 (Tex. Crim. App. 1996) (op. on reh’g).

In 
Peterson
, the Texas Court of Criminal Appeals set out the following three-pronged analysis to be employed by courts in analyzing a double jeopardy mistrial claim:

1) Did manifestly improper prosecutorial misconduct provoke the mistrial?

2) Was the mistrial required because the prejudice produced from that misconduct could not be cured by an instruction to disregard? 

3) Did the prosecutor engage in that conduct with the intent to goad the defendant into requesting a mistrial (
Kennedy
 standard) or with conscious disregard for a substantial risk that the trial court would be required to declare a mistrial (
Bauder
 standard)?

Peterson, 
117 S.W.3d at 
816-17 (footnotes omitted).

When raising a double jeopardy claim on a pretrial writ of habeas corpus, the applicant bears the burden of proof under a preponderance of the evidence standard.  
Id
. at 818
.  Therefore, Appellant must satisfy all three prongs of the 
Peterson
 test by a preponderance of the evidence.  
See id
.

Standard of Review

In reviewing the trial court’s decision to grant or deny habeas relief, we must review the facts in the light most favorable to the trial judge’s ruling and should uphold the decision absent an abuse of discretion.  
See id
. at 819
.  We should afford almost total deference to a trial court’s determination of the historical facts that the record supports, especially when the trial court’s fact findings are based on an evaluation of credibility and demeanor.  
See id
.  We also afford that same level of deference to a trial court’s ruling on application of law to fact questions, also known as mixed questions of law and fact, if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor.  
See id
.  But appellate courts review de novo those mixed questions of law and fact that do not depend upon credibility and demeanor.  
Id
.  Although reviewing courts should also grant deference to “implicit factual findings” that support the trial court’s ultimate ruling, they cannot do so if they are unable to determine from the record what the trial court’s implied factual findings are.  
Id
.

Analysis

Appellant argues that the prosecutor’s decision to call as a witness an assistant district attorney who was not otherwise involved in the trial of the case clearly constitutes prosecutorial misconduct.
(footnote: 2)  To support this argument, Appellant relies on a recent opinion issued by this court, 
Powers v. State
, 140 S.W.3d 851 (Tex. App.—Fort Worth 2004) 
rev’d,
 ___ S.W.3d ___, 2005 WL 1398110 (Tex. Crim. App. 2005).  Because our decision in 
Powers
 was recently reversed by the court of criminal appeals on the very issue for which Appellant cites it, the precedential underpinnings of his argument are shaky at best.

But we need not answer the question of whether Calvert’s testimony rose to the level of prosecutorial misconduct because even if it did, Appellant’s double jeopardy argument fails the first prong of the 
Peterson 
test:  Appellant failed to show by a preponderance of the evidence that the alleged prosecutorial misconduct “provoked” the mistrial.  
See Peterson, 
117 S.W.3d at 
816-17.  The trial court specifically found that Appellant failed to prove that the alleged misconduct provoked the mistrial.  The record shows that the trial court ordered a mistrial not because of the alleged prosecutorial misconduct, but because the jury was hopelessly deadlocked.  The notes from the jury to the trial court do not suggest that Calvert’s testimony had anything to do with their inability to reach a verdict.  Indeed, the jury’s second note suggests that their dispute was not 
whether
 the arresting officer
 could see Appellant’s penis—the issue to which Calvert’s testimony pertained—but what Appellant was doing with his penis 
when
 the officer saw it.  The prosecutor’s conduct may have provoked Appellant’s request for a mistrial, but nothing in the record suggests that it provoked the mistrial ultimately declared by the trial court.  Reviewing the record in the light most favorable to the trial court’s finding, we cannot say that the trial court abused its discretion by denying Appellant habeas relief.

Appellant urges us to expand the rule from 
Kennedy
, 
Bauder
, and
 Peterson
 to preclude retrial when a defendant moves for a mistrial because of prosecutorial misconduct, the trial court denies the motion, and the jury is unable to reach a verdict.  As Appellant admits, the rule he proposes has not been adopted by any court in the United States, and we decline to adopt it here.

We hold that the trial court did not abuse its discretion by denying Appellant’s petition for habeas relief.  We overrule Appellant’s sole issue and affirm the trial court’s denial of Appellant’s petition for a writ of habeas corpus.

ANNE GARDNER

JUSTICE

PANEL A: CAYCE, C.J.; GARDNER and MCCOY, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:
  August 11, 2005

FOOTNOTES
1:
See 
Tex. R. App. P. 
47.4.

2:
Appellant contends that Calvert was involved in the prosecution of the case, but the record refutes his contention.  When Appellant alleged in his motion for new trial that Calvert participated in the trial as the second chair prosecutor, the trial court admonished Appellant’s attorney not to misstate the record and noted that Calvert did nothing more than sit in the courtroom for part of the trial.