In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-14-00138-CR
NO. 09-14-00139-CR
NO. 09-14-00140-CR

_____

EX PARTE ROY WAYNE JACKSON JR.

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-12-13308-CR, Counts I, II, and III

## MEMORANDUM OPINION

Appellant Roy Wayne Jackson Jr. appeals the trial court's denial of his application for a pretrial writ of habeas corpus, in which he contended that double jeopardy barred further prosecution after the trial judge granted a mistrial. We affirm the trial court's order denying Jackson's application for a writ of habeas corpus.

Jackson, the complainant's stepfather, was indicted for continuous sexual abuse of a child, aggravated sexual assault of a child, and sexual assault of a child. Jackson's trial began on December 9, 2013. The complainant was pregnant when

1

the authorities began their investigation, and she gave birth on June 4, 2012. DNA samples taken via buccal swabs from the complainant, her baby, some of Jackson's known children, and Jackson himself revealed that Jackson could not be excluded as the biological father of the complainant's baby. According to the DNA results, "for the U.S. Caucasian population, the evidence is 705 million times more likely that Roy Wayne Jackson is the biological father of [the complainant's baby] . . . as compared to unrelated individuals of U.S. Caucasian descent. So that equates to a probability of paternity of 99.9999998 percent."

The complainant testified that Jackson is her child's father, and she explained that Jackson began molesting her when she was eight years old. The complainant later requested a break, during which she disclosed to the prosecutor that she was also having sexual relations with her half-brother, who is Jackson's son. After some further testimony from the complainant, the trial judge recessed for the day. When trial resumed the following day, the prosecutor stated that the State had requested overnight DNA testing on the complainant's brothers and would have the results that evening. Defense counsel then requested a continuance to retest the evidence because "it could be dispositive of the case and potentially exculpatory through our own testing." The prosecutor stated, "I don't know if [the

2

complainant's half-brother] was ever excluded because he's familial with the defendant" and "[the complainant's] mom is his mom."

After permitting the State to call a witness from Safe Harbor out of order due to a scheduling conflict, the trial judge and counsel began having a discussion outside the presence of the jury. The prosecutor stated that the complainant told him Jackson never touched her, but the complainant then said, "I know what it's like to grow up without a father. I don't want my brothers to be mad at me." The trial judge stated, "I think this impacts your ability to defend your client. . . . I want the record to reflect that this also goes to exculpatory evidence." The trial judge took a break and defense counsel requested a continuance. The trial judge stated, "I'm going to grant [a continuance] at your request . . . ."

After taking another break, the following colloquy transpired between the trial judge and counsel:

> THE COURT: We're going back on the record. . . . What happened so that the record is clear is that we had some new evidence in the middle. The [S]tate has sent off to get DNA on the baby of the complainant. . . . It may be the son of the defendant or it could possibly be the son of the defendant's son?
>
> [Defense counsel]: That's correct.
>
> THE COURT: Okay. And to make matters worse, the complainant is the half[-]sister of . . . the defendant's son. The defendant's son is her half[-]brother. . . .

3

So the defense moved for [a] continuance. I, on my own sua sponte, am going to declare a mistrial. I think it's manifest necessity. I think it could be exculpatory to the defendant. I'm concerned that the defense has enough time to hire [its] own expert if they choose to do so. . . . If . . . the son of this defendant is excluded, there still may be an issue about the DNA due to the fact that it's so closely interwoven.

So because of that I decided in the interest of justice to grant a mistrial. . . .

I want you to know I admonished the jurors. I admonished them not to discuss this case. I admonished them that I was declaring a mistrial, it was me doing this, it wasn't on either one of you, that I felt it was in the interest of justice because there was some additional evidence. And I told them it's important they understand that another jury is going to be hearing this and not to go around telling people anything about the case because it's still going and still pending.

This is rare. . . . But because you asked for a continuance and then we talked about doing it on Monday and you said I have a murder trial Monday then you explained that you also had something January and February and we could come back March 31st. I'm not going to make this jury come back March 31st. It's just too many issues. . . . Is there anything else that anybody wants to put on the record?

[Prosecutor]: No, Judge. The state understands your ruling. We did expedite the DNA. We would have results back today. State was prepared to go forward with our witnesses in trial.

THE COURT: Okay.

[Defense counsel]: Nothing further, Judge.

THE COURT: . . . So is March 31 okay? I never got you on the record. Is that an okay date for you to go forward on the trial?

[Defense counsel]: I mean, that's the only date available, right? Is that it, Judge?

THE COURT: Well, we had some other dates.

4

[Defense counsel]: But they are all before that, right?

THE COURT: Right.

[Defense counsel]: I can't do anything before that, Judge, because . . . that [murder] trial . . . could last maybe a month.

. . .

THE COURT: . . . I know jeopardy did attach because, obviously, the witnesses were sworn and the jury was sworn. But . . . sua sponte I am saying there is manifest necessity and I'm granting a mistrial. And I'm granting the continuance and we'll start back up in March.

[Defense counsel]: Okay. Thank you, Judge.

Jackson subsequently filed an application for a pretrial writ of habeas corpus, in which he asserted that double jeopardy bars further prosecution because the trial court had granted a continuance, and no manifest necessity existed for granting a mistrial. The trial court signed an order denying Jackson's application. In his sole appellate issue, Jackson argues that the trial court abused its discretion by declaring a mistrial *sua sponte* without considering less drastic measures.

"The Fifth Amendment to the United States Constitution prohibits a State from twice putting a defendant in jeopardy for the same offense." *Ex parte Brown*, 907 S.W.2d 835, 838 (Tex. Crim. App. 1995) (citations omitted). Jeopardy attaches once a jury has been impaneled and sworn. *Id*. at 839. "Consequently, as a general rule, if, after the defendant is placed in jeopardy, the jury is discharged

5

without reaching a verdict, double jeopardy will bar retrial." *Id*. Exceptions to the rule exist if the defendant consents to a retrial or if retrial is mandated by manifest necessity. *Id*. A defendant who does not object to the trial judge's *sua sponte* declaration of a mistrial, despite an adequate opportunity to do so, has impliedly consented to the mistrial. *See Torres v. State*, 614 S.W.2d 436, 441-42 (Tex. Crim. App. [Panel Op.] 1981); *Ledesma v. State*, 993 S.W.2d 361, 365 (Tex. App.—Fort Worth 1999, pet. ref'd).

As indicated by the above-quoted colloquy between the trial judge, the prosecutor, and defense counsel, Jackson's counsel had an adequate opportunity to object, but did not do so, and defense counsel discussed future trial dates with the trial judge after she indicated that she had *sua sponte* declared a mistrial and released the jury. We conclude that Jackson consented to the mistrial.[1] *See Torres*, 614 S.W.2d at 441-42; *Ledesma*, 993 S.W.2d at 365. Therefore, double jeopardy does not bar further prosecution. *Ex parte Brown*, 907 S.W.2d at 838. Accordingly, we overrule issue one and affirm the trial court's order denying Jackson's pretrial application for writ of habeas corpus.

---

[1]Because we conclude that Jackson consented to the trial court's *sua sponte* declaration of a mistrial, we need not address his argument alleging that manifest necessity did not exist. See Tex. R. App. P. 47.1; *Ex parte Brown*, 907 S.W.2d 835, 838 (Tex. Crim. App. 1995).

6

AFFIRMED.

_____
STEVE McKEITHEN
Chief Justice

Submitted on July 29, 2014
Opinion Delivered August 6, 2014
Do Not Publish

Before McKeithen, C.J., Horton and Johnson, JJ.

7