COURT
OF APPEALS

EIGHTH DISTRICT OF
TEXAS

EL PASO, TEXAS

 

 


 
 
 GABRIEL EDWARD GOMEZ,
  
                            
 Appellant,
  
 v.
  
  
 THE STATE OF TEXAS,
  
                            
 Appellee.
 
 
 §
  
 §
  
 §
  
 §
  
 §
  
  § 
  
 
 
                                     
 No. 08-10-00276-CR
  
 Appeal from the
  
 409th
 District Court
  
 of
 El Paso County, Texas 
  
 (TC# 20050D02303) 
  
 
 


 

O P I N I O N

 

            Gabriel
Gomez appeals his conviction of two counts of aggravated assault with a deadly
weapon.  Gomez argues that:  (1) the trial court erred in sua sponte excusing a disqualified juror
and declaring a mistrial; (2) he was denied a fair trial as a result of
improper and prejudicial arguments made by the State of Texas during closing
argument; and (3) his trial counsel rendered ineffective assistance on ten
separate occasions during the course of the trial.  Finding no error, we affirm.

BACKGROUND

            On
May 25, 2005, Appellant was charged by indictment with three counts of
aggravated assault with a deadly weapon.  Count I alleged that Gomez assaulted Michael
Carrasco with a knife (Paragraph A) or a metal pole (Paragraph B).  Count II alleged that Gomez assaulted Jorge
Martinez with a knife (Paragraph A) or a metal pole (Paragraph B).  Finally, Count III alleged that Gomez
assaulted Julianna Marquez with a knife.

            The
case was originally called for trial on May 7, 2010.  After the twelve members of the jury were
sworn and seated, one of the jurors raised his hand and informed the trial
court that he had held back information during voir dire.  The trial court commenced an inquiry and
learned that the juror had been the victim of an assault approximately fifteen years’
prior and that the juror would not be fair to the defense.  The trial court then informed the parties that
it was declaring a mistrial based on manifest necessity, and inquired of
counsel as to whether they had any objection. 
Defense counsel stated that he had no objections, and when asked whether
he joined “in this mistrial” stated “[a]bsolutely.”  The prosecutor was asked if he joined in the
mistrial of the case, and he responded “Judge, so long as it doesn’t create a
jeopardy situation, I don’t have a problem.”

            Jury
selection and trial were then re-set for August 27, 2010.  At trial, Appellant’s counsel waived his
opening statement and Jorge Martinez, Julianna Marquez, and Michael Carrasco
each testified that they had been stabbed by Gabriel Gomez during the course of
an altercation between themselves and numerous other individuals.  The fight occurred in the early morning hours
of February 13, 2005, at approximately 2:30 a.m.  Janet Nunez testified that after the
altercation, Gomez admitted that he had stabbed somebody during the fight.  Roxanne Gomez (no relation to Appellant)
testified that Appellant participated in the fight in which three individuals
were stabbed, but she did not specifically see the actual stabbings.

            One
of Appellant’s relatives testified that Gomez was home that evening until about
9:15 p.m. at which time he left to go to a party.  Appellant testified that he stayed at a party
all night, he did not participate in any fight, he did not stab anyone, he had
never seen Michael Carrasco, Jorge Martinez, or Julianna Marquez before they
testified in court, and that Carrasco, Martinez, Marquez, and the other
witnesses “made everything up.”

            During
the State’s closing argument, the prosecutor argued that Appellant’s testimony
was a lie and repeatedly referred to various Disney characters as he attempted
to portray Appellant’s testimony as a fantasy. 
Defense counsel’s closing argument encompasses approximately two pages
of the trial transcript.

            The
trial court elected to submit only Paragraph A of Count I, Paragraph A of Count
II, and Count III to the jury.  The court
did not submit Paragraph B of either Count I or Count II to the jury.  The jury returned a verdict of guilty as to
Counts I and II, and not guilty as to Count III of the Indictment.  Following a punishment hearing, the jury
assessed punishment at confinement in the Institutional Division of the Texas
Department of Criminal Justice for a period of twenty (20) years and a fine of
$10,000 as to Count I and Count II.  The
trial court imposed the sentence assessed by the jury and ordered that both
counts run concurrent to one another.

DISCUSSION

            In
his first issue, Appellant argues that the trial court erred when it sua sponte declared a mistrial after
learning that an impaneled juror would not be fair to the defense.  Appellant asserts that the trial court did
not:  (1) properly examine the juror to
determine whether he should, in fact, be disqualified; and (2) examine any less
drastic alternatives to declaring a mistrial based on manifest necessity.  Finally, although it is not clear, it appears
that Appellant also argues that jeopardy had attached at the time the trial
court declared a mistrial which barred further prosecution.

The Double
Jeopardy Clause of the United States Constitution provides:  “[N]or shall any person be subject for the
same offence to be twice put in jeopardy of life or limb. . . .”  U.S. Const.
Amend. V.  Article I, Section 14 of the Texas
Constitution states:  “No person, for the
same offense, shall be twice put in jeopardy of life or liberty, nor shall a
person be again put upon trial for the same offense, after a verdict of not
guilty in a court of competent jurisdiction.”  Tex.Const.
art. I, § 14 n.1.  Jeopardy attaches when
a jury is impaneled and sworn.  Ex parte Brown v. State, 907 S.W.2d 835,
839 (Tex.Crim.App. 1995), citing Crist v. Bretz, 437 U.S. 28, 35, 98
S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978).  Consequently,
if, after jeopardy has attached, the jury is discharged without reaching a
verdict, double jeopardy will bar retrial.  Brown,
907 S.W.2d at 839, citing Green v. United States, 355 U.S. 184,
188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957).

An exception to
this rule exists if the defendant consents to a retrial, or if a retrial is
mandated by some form of manifest necessity.  Arizona
v. Washington, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978);
Brown, 907 S.W.2d at 839; Ex parte Little, 887 S.W.2d 62, 65
(Tex.Crim.App. 1994).  This exception
exists to prevent the defeat of the ends of public justice, including the
public’s interest in fair trials designed to end in just judgments.  See
Harrison v. State, 788 S.W.2d 18, 21 (Tex.Crim.App. 1990).  Thus, where manifest necessity exists to
declare a mistrial, the constitutional prohibition against double jeopardy is
not implicated and retrial is permitted.  Oregon
v. Kennedy, 456 U.S. 667, 672, 102 S.Ct. 2083, 2087-88, 72 L.Ed.2d 416
(1982); Brown, 907 S.W.2d at 839.  Neither the Supreme Court nor the Court of
Criminal Appeals has precisely defined the circumstances in which manifest
necessity exists, but a trial judge’s discretion to declare a mistrial based on
manifest necessity is limited to extraordinary and striking circumstances.  See
Brown, 907 S.W.2d at 839 (and cases cited therein).  As a general rule, however, manifest necessity
exists where the circumstances render it impossible to arrive at a fair
verdict, where it is impossible to continue with trial, or where the verdict
would be automatically reversed on appeal because of trial error.  Brown,
907 S.W.2d at 839.  While the trial judge
has discretion in declaring a mistrial based on manifest necessity, the judge
is required to consider and rule out “less drastic alternatives” before
granting a mistrial.  See Brown, 907 S.W.2d at 839.  In reviewing the trial court’s ruling, we
apply an abuse of discretion standard.  See Brown, 907 S.W.2d at 839; Little, 887 S.W.2d at 66.

Because of the
fundamental nature of double jeopardy protections, a double jeopardy claim may
be raised for the first time on appeal, or even for the first time by
collateral attack, when the undisputed facts show the double jeopardy violation
is clearly apparent on the face of the record and when enforcement of usual
rules of procedural default serves no legitimate state interests.  Gonzalez
v. State, 8 S.W.3d 640, 643 (Tex.Crim.App. 2000).

At the conclusion
of jury selection on May 7, 2010, the following exchange between the trial
court and defense counsel occurred:

[The Court]:  I am declaring a mistrial based on manifest
necessity as of this point.  Do you have
any objections?

[Defense counsel]:  None, Your Honor.

[The Court]:  You join in this mistrial?

[Defense counsel]:  Absolutely.

 

Appellant clearly
and unequivocally joined in the mistrial and consented to a new trial.  See
Arizona, 434 U.S. at 505. 09 S.Ct. at 830.  We need not reach Appellant’s contention that
the trial court erred by sua sponte
declaring a mistrial in light of the fact that Appellant willfully joined in and
consented to the mistrial.  Nor need we
examine the applicability of the manifest necessity exception given Appellant’s
consent to the mistrial.  We find no
abuse of discretion by the trial court and Appellant’s first issue is
overruled.

            In
his second issue, Appellant asserts that he was denied a fair trial as a result
of the State of Texas’ improper and prejudicial closing argument which
Appellant characterizes as “completely inappropriate and childish” and “an
embarrassment to the legal dignity of the Court.”

            Specifically,
Appellant complains of the following statements made by the prosecutor:

Mr. Callan:  Thank you, Your Honor.  Ladies and gentlemen of the jury, I am going
to propose to you something that may sound shocking.  And in most other cases that I have tried it
is completely out of place and that is this:  You are not having to deal with one thing, you
are having to deal with two things.  You
are having to decide whether or not he committed this crime.  And you are having to deal with an affront to
justice.  And that affront to justice is
his testimony.  His testimony was a
lie.  That’s perjury.  That’s another crime.  That is how brazen he is.

 

.               .               .

 

Walt Disney could have
gotten up here and told a better story.  He
could have gotten up here and said, I was at my Aunt – oh, let’s pick a name –
Annette Funicello’s house, who is really my cousin.  And we were there – I was eating pizza there
with Peter.  And then we decided to go to
a party and we were going to go with Mauro and so my aunt told me goodbye.  Cross-examination, Well, how did she tell you
goodbye?  Well, she said, Now, it’s time
to say goodbye to all our family.  G-A-B-R-I-E-L G-O-M-E-Z.  (Mr. Callan singing).

 

Goodbye, Gabrial
Gomez.  Don’t stay out too late.  Come back early.  So he takes off to his party with Peter.  Well, Mr. Gomez, Who is Peter?  Well, he is a leader.  No.  No.
 What is his last name?  I think it’s Pan.  Peter Pan. Well, what is he?  He is a leader.  Well, who is he the leader of?  The Lost Boys.  Are you a lost boy?  No, I am the Lost Boy.

 

.               .               .

 

Well, who was there?  Well, there was a lot of guys there.  Well, what kind of guys were there.  Well, there was Bashful, Doc, Dopey, Grumpy,
Happy, and there was Sleepy.  Well, what
are their last names?  I don’t know.  I don’t know.

 

.               .               .

 

Well, can you describe
them?  They are dwarfs.  But you don’t know their last names and you
don’t know where they live?  No.  Well, did they see you at the party?  I don’t know.  Well, what about Sleepy, did he see you?  No, he was asleep.  What about Sneezy?  No, he is sick all the time.  Well, why didn’t you call him to testify?  Well, I couldn’t find him and he was probably
sick anyways so he couldn’t come to court.

 

Well, who else was
there?  Well, Dopey was there.  What is Dopey’s last name?  I don’t know.  Well, did he see anything?  I don’t think so.  You know, Dopey, he dopes.  He was probably sky high and can’t remember a
thing.  What about Bashful?  Well, we didn’t call him because he is shy and
he probably wouldn’t have been able to tell us anything because he is so
shy.  He would have stage fright.

 

.               .               .

 

Well, who else?  Well, Doc was there.  Well, could Doc tell you what happened?  No, he was busy dispensing medication,
prescription drugs out to all these guys. 
Well, what was he giving out?  Rohypnol.  Well, why did he do that?  Because he wanted to make sure the guys had an
edge.  Well, what do you mean?  Well, you know, Rohypnol, it’s the date rape
drug.  And there were all these
good-looking women there.  And they need
an edge to get the advantage.

 

Well, who were the
good-looking women there?  Well, there
was Bianca Nieves.  It was her
quinceanera.  It was Snow White’s quinceanera.
 Well, did she see anything?  No, some old hag, some lady gave her apple [sic]
and she fell asleep so but [sic] the time I got there, she was asleep.  Well, what other young girls were there?  Aurora. 
Well, did she see anything?  No,
she was asleep to [sic].  Well, what do
you mean?  Well, she is Sleeping
Beauty.  She sleeps all the time.  Well, who else was there?  Well, Ariel was there.  Well, did she see anything?  No, she was in the backyard in the pool.  She likes water.

 

That’s his story
ladies and gentlemen of the jury.  That’s
his story.

 

            The
prosecutor continued his closing argument by referring to a number of other
fictional characters including Woody, Jessie, and Buzz.  At that point, defense counsel objected
noting that while the prosecutor’s argument was “all very entertaining,” he was
“arguing outside the record.”  The trial
court overruled the objection, and the prosecutor then referred to Space
Rangers, Emperor Zurg, Mr. and Mrs. Potato Head, and Long Tall Sally.

            Appellant
argues, inter alia, that the State
used its closing argument to place matters before the jury which were outside
the record and “prejudicial to the accused” sufficient so as to deny him a fair
trial.  The State counters that
Appellant’s single objection to the prosecutor’s comments was insufficient to
preserve this issue for our review, that Appellant’s multiple appellate
complaints do not comport with the objection made at trial, and that the
prosecutor did not improperly argue facts outside the record.

Generally,
improper jury argument may be cured by an instruction to disregard, unless “in
light of the record as a whole it was extreme or manifestly improper, violative
of a mandatory statute, or injected new facts harmful to the accused.”  Hawkins
v. State, 135 S.W.3d 72, 75 (Tex.Crim.App. 2004), citing Cooks v. State,
844 S.W.2d 697, 727 (Tex.Crim.App. 1992), cert.
denied, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

To preserve error
regarding improper jury argument, a party is required to continue to object
each time improper jury argument is offered. 
Dickerson v. State, 866 S.W.2d
696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref’d).  A defendant ordinarily should:  (1) contemporaneously object to the statement;
(2) request an instruction that the jury disregard the statement if the
objection is sustained; and (3) move for a mistrial if the instruction is
granted.  Cooks, 844 S.W.2d at 727-28.  However, while this sequence is not essential
to preserve complaints for appellate review, the essential requirement is a
timely, specific request that the trial court refuses.  Young v.
State, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004).  “[A]n event that could have been prevented by
timely objection or cured by instruction to the jury will not lead an appellate
court to reverse a judgment on an appeal by the party who did not request these
lesser remedies in the trial court.”  Young, 137 S.W.3d at 70.  Moreover, the appellate complaint challenging
the motion for mistrial must comport with the motion made at trial.  Broxton
v. State, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995).  The mistrial motion must be timely, that is,
it must be made as soon as the grounds for the mistrial become apparent.  Griggs
v. State, 213 S.W.3d 923, 927 (Tex.Crim.App. 2007).

In determining
whether the State engaged in improper jury argument, we consider the entire
argument presented, not isolated sentences.  Rodriguez
v. State, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref’d).  Generally, proper jury argument consists of:  (1) summation of the evidence; (2) reasonable
deductions from the evidence; (3) answer to argument of opposing counsel; and
(4) a plea for law enforcement.  Jackson v. State, 17 S.W.3d 664, 673 (Tex.Crim.App. 2000);
Morales v. State, 11 S.W.3d 460, 463 (Tex.App.--El
Paso 2000, pet. ref’d).

Here, counsel
lodged a single objection to the complained of argument which was overruled by
the trial court.  Appellant did not
request a running objection to the arguments made by the State.  Further, counsel made no request for an
instruction that the jury be ordered to disregard the prosecutor’s statements,
nor did he make a motion for mistrial. 
Under these circumstances, we cannot say that Appellant preserved this
complaint sufficient for our review.

Had we determined
that Appellant preserved this issue for review, we conclude, after considering
the entire argument presented, that the prosecutor, however inartfully, was
attempting to draw a comparison between the evidence offered by the State and
the evidence offered by Appellant, in order to convince the jury that
Appellant’s version of the events was not believable or credible.  Such arguments are proper.  Issue Two is overruled.

            In
his final issue, Appellant claims that he was denied a fair trial because his
counsel was ineffective.  Appellant makes
ten specific complaints regarding his counsel’s conduct during the trial.  They are that:  (1) the trial court permitted Janet Nunez’
identification testimony without the proper predicate over counsel’s objection;
(2) a metal pole was admitted into evidence without a proper chain of custody;
(3) photographs of Michael Carrasco’s vehicle were admitted into evidence
without the proper predicate and identification; (4) 48 additional photographs
were admitted into evidence without “proper review” or authentication; (5) 36
additional photographs were admitted into evidence without the proper
predicate; (6) defense counsel waived opening statement at both the
guilt/innocence and punishment phases of the trial; (7) defense counsel made a
“short jury argument” at the guilt/innocence stage of the trial; (8) defense
counsel failed to move for a directed verdict as to all counts in the
indictment; (9) defense counsel failed to request an alibi instruction; and
(10) defense counsel failed to move for a mistrial when a witness called by the
State invoked her Fifth Amendment right not to testify during the course of her
testimony in the punishment stage of the trial.

            The
standard for reviewing claims of ineffective assistance of counsel is the
two-step analysis adopted by the United States Supreme Court in Strickland
v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  In order to establish ineffective assistance
of counsel, an appellant must prove that:  (1) his counsel’s performance was deficient;
and (2) he was prejudiced by the deficiency. 
Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.  If an appellant fails to satisfy his burden
under the first Strickland prong, there is no need to address the
second.  See Thompson v. State, 9
S.W.3d 808, 813-14 (Tex.Crim.App. 1999).

            Under
the first prong of the Strickland analysis, counsel’s performance is
deficient when it falls below an objective standard of reasonableness.  Thompson, 9 S.W.3d at 812.  Appellate review of trial counsel’s conduct
is highly deferential and presumes that counsel’s actions fell within the wide
range of reasonable professional assistance. 
Mallett v. State, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001).  The
burden of overcoming this presumption falls on the appellant.  Strickland, 466 U.S. at 689, 104 S.Ct.
at 2065.  Any allegation of
ineffectiveness must be firmly rooted and affirmatively demonstrated in the
record to overcome this strong presumption. 
Thompson, 9 S.W.3d at 813; Jackson v. State, 877 S.W.2d
768, 771 (Tex.Crim.App. 1994).  In the
majority of instances, this task is extremely difficult because the record on
direct appeal is simply undeveloped and cannot adequately reflect the
deficiencies of trial counsel’s performance. 
Thompson, 9 S.W.3d at 813-14.

            As
is the case in so many claims of ineffective assistance on direct appeal, we do
not have the benefit of a record containing trial counsel’s explanation for not
pursuing the objections, motions and other matters in the manner Appellant now
argues.  As a consequence, we must
presume that trial counsel had a reasonable professional basis for his
decisions and actions, and that he acted within the range of reasonable
professional assistance.  Thompson,
9 S.W.3d at 814.  Absent a developed record,
our inquiry on direct appeal is limited to whether the challenged conduct was,
“so outrageous that no competent attorney would have engaged in it.”  See Goodspeed v. State, 187 S.W.3d
390, 392 (Tex.Crim.App. 2005).

As noted above,
Appellant contends that trial counsel’s representation was constitutionally
deficient in ten separate instances.

            Appellant
first complains that the trial court allowed Janet Nunez’ to testify as to her identification
of Appellant without the proper predicate being laid and over counsel’s
objection. Because Appellant’s counsel did, in fact, object to the
identification testimony at the time that it was offered, his claim of
ineffective assistance of counsel is not firmly found in the record.  See
Lopez v. State, 343 S.W.3d 137, 142 (Tex.Crim.App. 2011).  We cannot conclude that his performance was
deficient given that he made an objection to the proffered evidence and
received a ruling from the trial court.  See Strickland, 466 U.S. at 687, 104 S.Ct.
at 2064.

            Next,
Appellant argues that a “metal pole, the alleged weapon used in this case, was
introduced by the State without any chain of custody.”  Although the argument is not particularly
clear, given the objection lodged by trial counsel to this evidence, we presume
that Appellant is arguing that the fact that the trial court’s overruling of
trial counsel’s objection to the admission of the metal pole into evidence
constituted ineffective assistance of counsel. 
Again, trial counsel objected to this evidence when it was offered, and
as a result, Appellant’s claim of ineffective assistance of counsel is not
firmly found in the record.  See Lopez, 343 S.W.3d at 142.  Again, we cannot conclude that counsel’s performance
was deficient given that he made an objection to the proffered evidence and
received a ruling from the trial court. 
See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Appellant’s
next three complaints relate to the admission into evidence of six photographs of
Michael Carrasco’s vehicle, as well as eighty-four crime scene and other photographs,
without “proper” identification, review, authentication, and predicate and that
their admission somehow constitutes ineffective assistance of counsel.  First, counsel objected to the six
photographs of Mr. Carrasco’s vehicle arguing that the proper predicate had not
been laid.  The trial court overruled the
objection.  Accordingly, Appellant’s
claim of ineffective assistance of counsel is not firmly found in the record.  See Lopez,
343 S.W.3d at 142.  Further, we
cannot conclude that counsel’s performance was deficient given that he made an
objection to the proffered evidence and received a ruling from the trial court.  See Strickland, 466 U.S. at 687, 104
S.Ct. at 2064.  Appellant’s trial counsel
did not object to the 84 crime scene and other photographs, but it is well
settled that defense counsel is not ineffective for failing to object to
admissible evidence.  See, e.g. Ex parte White, 160 S.W.3d 46,
53 (Tex.Crim.App. 2004).  The officers’
testimony as to all of the photographs, regardless of who may have actually
taken them, was sufficient to authenticate them and establish the predicate for
their admission into evidence.  See. Tex.R.Evid.
901.  With respect to all of the
photographs, both officers testified that each photograph accurately depicted
that which it purported to show.  A
witness who authenticates a photograph need not have been the actual
photographer, nor even have been present when the photograph was taken.  See
Hughes v. State, 878 S.W.2d 142, 155 (Tex.Crim.App. 1992)(op. on reh’g), cert. denied, 511 U.S. 1152, 114 S.Ct.
2184, 128 L.Ed.2d 902 (1994).  The record
before us does not indicate why counsel failed to object to the photographs,
and we can certainly envision many tactical reasons for his decision.  Because we find that the photographs were sufficiently
authenticated and because Appellant has not established that they were
otherwise inadmissible, he is unable to show any deficient performance by his
trial counsel.  See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Next,
Appellant complains that his trial counsel was ineffective because he waived
opening statements at the beginning of both the guilt/innocence and punishment
stages of the trial, and gave a short closing argument at the conclusion of the
guilt/innocence stage.  Again, the record
is silent as to the reasons why Appellant’s trial counsel elected to waive
opening statements and give a short closing argument.  However, such decisions are inherently
strategic in nature, and there are many plausible reasons for waiving an opening
statement or delivering a brief closing argument.  See
Taylor v. State, 947 S.W.2d 698, 704 (Tex.App.--Fort Worth 1997, pet.
ref’d)(defendant failed to show ineffective assistance of counsel due to
waiving opening statement where record was silent on direct appeal as to
counsel’s trial strategy).  Because we
are unable to determine counsel’s strategy on the basis of the record before
us, Appellant is unable to show any deficient performance by his trial counsel
as to these claims.  See Strickland, 466 U.S. at 687, 104 S.Ct. at 2064.

            Appellant
also argues that his counsel was ineffective for the reason that he failed to
move for a directed verdict as to all counts in the indictment.  Once the State rested its case-in-chief,
defense counsel moved for a directed verdict as to Count I of the
indictment.  He did not move for a
directed verdict as to Counts II and III.[1]  Counsel is not deficient for failing to move
for a directed verdict if the State presents more than a scintilla of evidence
to support a guilty verdict.  See Wooster v. State, 08-05-00177-CR,
2007 WL 2385925, at *6-7 (Tex.App.--El Paso Aug. 16, 2007, no pet.)(not
designated for publication); Gill v.
State, 111 S.W.3d 211, 217 (Tex.App.--Texarkana 2003, no pet.).  Here, given the testimony of Jorge Martinez
himself, the State presented more than a scintilla of evidence to support a
finding that Appellant stabbed Jorge Martinez with a knife as alleged in Paragraph
A of Count II of the indictment.  See Padilla v. State, 254 S.W.3d 585,
590 (Tex.App.--Eastland 2008, pet. ref’d)(victim’s testimony alone, if
believed, is sufficient to support a conviction for aggravated assault with a
deadly weapon).  Obviously, in light of
the verdict, the jury believed Mr. Martinez’ testimony.[2]
 As we have noted elsewhere in this
opinion, because we are unable to determine counsel’s strategy on the basis of
the record before us, Appellant is unable to show any deficient performance by
his trial counsel as to this claim.  See Strickland, 466 U.S. at 687, 104
S.Ct. at 2064.

            Next,
Appellant asserts that his counsel was ineffective when he failed to request
and then failed to object to the absence of an instruction regarding
Appellant’s alibi. The Court of Criminal Appeals has addressed this issue,
holding that a defendant is not entitled to an instruction regarding an alibi
as such an instruction would constitute an improper comment on the weight of
the evidence.  See Giesberg v. State, 984 S.W.2d 245, 250 (Tex.Crim.App. 1998), cert. denied, 525 U.S. 1147, 119 S.Ct.
1044, 143 L.Ed.2d 51 (1999).  Because
Gomez was not entitled to an alibi instruction, he is unable to demonstrate any
deficient performance by his counsel in not requesting such an instruction and
in then failing to object to the trial court’s not including such an
instruction in the court’s charge.  Given
the jury’s verdict, it is clear that they chose not to believe the evidence of
alibi offered by Gomez.

            Finally,
Appellant argues that his counsel was ineffective when he failed to move for a
mistrial when Amanda Dias, while being examined by the State during the
punishment phase of the trial, invoked her Fifth Amendment right and elected
not to answer any additional questions. The State called Ms. Dias to testify to
extraneous conduct evidence that she had been assaulted by Gomez.  Once on the witness stand, Ms. Dias stated
that she did not remember the incident. 
A 9-1-1 call made by Ms. Dias was played, but she was still unable to
recall the incident.  On
cross-examination, Ms. Dias told Appellant’s counsel she was unable to recall
the incident.  The State requested that
the trial court declare Ms. Dias an adverse witness, and the court declined to
do so.  The trial court then appointed
counsel for Ms. Dias, at which time she invoked her Fifth Amendment right and
refused to answer any further questions. 
Appellant’s counsel then objected to Ms. Dias’ testimony on the grounds
that he would not be able to cross-examine her on the issues raised in the
9-1-1 call, and moved to have the recording of the 9-1-1 call struck from the
record.  Appellant’s counsel did not move
for a mistrial or ask that Ms. Dias’ testimony be stricken.  As we have repeatedly noted herein, the record
is silent as to why counsel did not move for a mistrial or why he elected not
to move to strike Ms. Dias’ testimony. 
There are any number of conceivable reasons for such strategic decisions
during trial, including that counsel might have believed the testimony was not
damaging because the witness was unable to recall the incident.  See
Lopez, 343 S.W.3d at 143-44 (appellate court should assume that counsel had
a strategic reason for his actions if any reasonable strategic motivation can
be imagined).

Appellant has
failed to demonstrate how his counsel’s actions fell outside the wide range of
reasonable professional assistance.  Whether
or not counsel’s decisions and actions were optimal is not for this Court to
determine.  We must only ask whether the
conduct was “so outrageous that no competent attorney would have engaged in it”
and in this case there is no basis for such a conclusion.  See
Goodspeed, 187 S.W.3d at 392.  Accordingly, Appellant has failed to establish
that counsel’s performance was deficient under the first prong of the Strickland
analysis, and it is unnecessary to address prejudice.  See Thompson, 9 S.W.3d at 813-14.  Issue Three is overruled.

CONCLUSION

            Having
overruled each of Appellant’s three issues, we affirm the trial court’s
judgment.

 

 

February 8, 2012

                                                                        CHRISTOPHER
ANTCLIFF, Justice

 

Before McClure, C.J., Rivera, and Antcliff, JJ.

 

(Do Not Publish)











[1] Notwithstanding trial
counsel’s determination not to move for a directed verdict as to Counts II and
III, the trial court, by virtue of its Charge of the Court, apparently granted
counsel’s motion for directed verdict as to Paragraph B of Count I and
Paragraph B of Count II in that neither of those Paragraphs were submitted to
the jury.

 





[2] Just as obviously, the
jury apparently did not believe the testimony of Julianna Marquez given that a
verdict of not guilty was returned as to Count III.  Any claim that counsel was ineffective
because he did not move for a directed verdict as to Count III is moot in light
of the verdict.