COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

GABRIEL EDWARD GOMEZ, §

§   No. 08-10-00276-CR

Appellant, §

§   Appeal from the

v. §

§   409th District Court

§

THE STATE OF TEXAS, §   of El Paso County, Texas

§

Appellee. §   (TC# 20050D02303)

§

**O P I N I O N**

  Gabriel Gomez appeals his conviction of two counts of aggravated assault with a deadly weapon. Gomez argues that: (1) the trial court erred in *sua sponte* excusing a disqualified juror and declaring a mistrial; (2) he was denied a fair trial as a result of improper and prejudicial arguments made by the State of Texas during closing argument; and (3) his trial counsel rendered ineffective assistance on ten separate occasions during the course of the trial. Finding no error, we affirm.

**BACKGROUND**

  On May 25, 2005, Appellant was charged by indictment with three counts of aggravated assault with a deadly weapon. Count I alleged that Gomez assaulted Michael Carrasco with a knife (Paragraph A) or a metal pole (Paragraph B). Count II alleged that Gomez assaulted Jorge Martinez with a knife (Paragraph A) or a metal pole (Paragraph B). Finally, Count III alleged that Gomez assaulted Julianna Marquez with a knife.

  The case was originally called for trial on May 7, 2010. After the twelve members of the

jury were sworn and seated, one of the jurors raised his hand and informed the trial court that he had held back information during voir dire. The trial court commenced an inquiry and learned that the juror had been the victim of an assault approximately fifteen years' prior and that the juror would not be fair to the defense. The trial court then informed the parties that it was declaring a mistrial based on manifest necessity, and inquired of counsel as to whether they had any objection. Defense counsel stated that he had no objections, and when asked whether he joined "in this mistrial" stated "[a]bsolutely." The prosecutor was asked if he joined in the mistrial of the case, and he responded "Judge, so long as it doesn't create a jeopardy situation, I don't have a problem."

Jury selection and trial were then re-set for August 27, 2010. At trial, Appellant's counsel waived his opening statement and Jorge Martinez, Julianna Marquez, and Michael Carrasco each testified that they had been stabbed by Gabriel Gomez during the course of an altercation between themselves and numerous other individuals. The fight occurred in the early morning hours of February 13, 2005, at approximately 2:30 a.m. Janet Nunez testified that after the altercation, Gomez admitted that he had stabbed somebody during the fight. Roxanne Gomez (no relation to Appellant) testified that Appellant participated in the fight in which three individuals were stabbed, but she did not specifically see the actual stabbings.

One of Appellant's relatives testified that Gomez was home that evening until about 9:15 p.m. at which time he left to go to a party. Appellant testified that he stayed at a party all night, he did not participate in any fight, he did not stab anyone, he had never seen Michael Carrasco, Jorge Martinez, or Julianna Marquez before they testified in court, and that Carrasco, Martinez, Marquez, and the other witnesses "made everything up."

-2-

During the State's closing argument, the prosecutor argued that Appellant's testimony was a lie and repeatedly referred to various Disney characters as he attempted to portray Appellant's testimony as a fantasy. Defense counsel's closing argument encompasses approximately two pages of the trial transcript.

The trial court elected to submit only Paragraph A of Count I, Paragraph A of Count II, and Count III to the jury. The court did not submit Paragraph B of either Count I or Count II to the jury. The jury returned a verdict of guilty as to Counts I and II, and not guilty as to Count III of the Indictment. Following a punishment hearing, the jury assessed punishment at confinement in the Institutional Division of the Texas Department of Criminal Justice for a period of twenty (20) years and a fine of $10,000 as to Count I and Count II. The trial court imposed the sentence assessed by the jury and ordered that both counts run concurrent to one another.

## DISCUSSION

In his first issue, Appellant argues that the trial court erred when it *sua sponte* declared a mistrial after learning that an impaneled juror would not be fair to the defense. Appellant asserts that the trial court did not: (1) properly examine the juror to determine whether he should, in fact, be disqualified; and (2) examine any less drastic alternatives to declaring a mistrial based on manifest necessity. Finally, although it is not clear, it appears that Appellant also argues that jeopardy had attached at the time the trial court declared a mistrial which barred further prosecution.

The Double Jeopardy Clause of the United States Constitution provides: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb. . . ." U.S.

CONST. AMEND. V. Article I, Section 14 of the Texas Constitution states: "No person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX.CONST. art. I, § 14 n.1. Jeopardy attaches when a jury is impaneled and sworn. *Ex parte Brown v. State*, 907 S.W.2d 835, 839 (Tex.Crim.App. 1995), *citing Crist v. Bretz*, 437 U.S. 28, 35, 98 S.Ct. 2156, 2161, 57 L.Ed.2d 24 (1978). Consequently, if, after jeopardy has attached, the jury is discharged without reaching a verdict, double jeopardy will bar retrial. *Brown,* 907 S.W.2d at 839, *citing Green v. United States*, 355 U.S. 184, 188, 78 S.Ct. 221, 224, 2 L.Ed.2d 199 (1957).

An exception to this rule exists if the defendant consents to a retrial, or if a retrial is mandated by some form of manifest necessity. *Arizona v. Washington*, 434 U.S. 497, 505, 98 S.Ct. 824, 830, 54 L.Ed.2d 717 (1978); *Brown*, 907 S.W.2d at 839; *Ex parte Little*, 887 S.W.2d 62, 65 (Tex.Crim.App. 1994). This exception exists to prevent the defeat of the ends of public justice, including the public's interest in fair trials designed to end in just judgments. *See Harrison v. State*, 788 S.W.2d 18, 21 (Tex.Crim.App. 1990). Thus, where manifest necessity exists to declare a mistrial, the constitutional prohibition against double jeopardy is not implicated and retrial is permitted. *Oregon v. Kennedy,* 456 U.S. 667, 672, 102 S.Ct. 2083, 2087-88, 72 L.Ed.2d 416 (1982); *Brown,* 907 S.W.2d at 839. Neither the Supreme Court nor the Court of Criminal Appeals has precisely defined the circumstances in which manifest necessity exists, but a trial judge's discretion to declare a mistrial based on manifest necessity is limited to extraordinary and striking circumstances. *See Brown*, 907 S.W.2d at 839 (and cases cited therein). As a general rule, however, manifest necessity exists where the circumstances

-4-

render it impossible to arrive at a fair verdict, where it is impossible to continue with trial, or where the verdict would be automatically reversed on appeal because of trial error. *Brown*, 907 S.W.2d at 839. While the trial judge has discretion in declaring a mistrial based on manifest necessity, the judge is required to consider and rule out "less drastic alternatives" before granting a mistrial. *See Brown*, 907 S.W.2d at 839. In reviewing the trial court's ruling, we apply an abuse of discretion standard. *See Brown*, 907 S.W.2d at 839; *Little*, 887 S.W.2d at 66.

Because of the fundamental nature of double jeopardy protections, a double jeopardy claim may be raised for the first time on appeal, or even for the first time by collateral attack, when the undisputed facts show the double jeopardy violation is clearly apparent on the face of the record and when enforcement of usual rules of procedural default serves no legitimate state interests. *Gonzalez v. State*, 8 S.W.3d 640, 643 (Tex.Crim.App. 2000).

At the conclusion of jury selection on May 7, 2010, the following exchange between the trial court and defense counsel occurred:

> [The Court]: I am declaring a mistrial based on manifest necessity as of this point. Do you have any objections?
> [Defense counsel]: None, Your Honor.
> [The Court]: You join in this mistrial?
> [Defense counsel]: Absolutely.

Appellant clearly and unequivocally joined in the mistrial and consented to a new trial. *See Arizona*, 434 U.S. at 505. 09 S.Ct. at 830. We need not reach Appellant's contention that the trial court erred by *sua sponte* declaring a mistrial in light of the fact that Appellant willfully joined in and consented to the mistrial. Nor need we examine the applicability of the manifest necessity exception given Appellant's consent to the mistrial. We find no abuse of discretion by the trial court and Appellant's first issue is overruled.

In his second issue, Appellant asserts that he was denied a fair trial as a result of the State of Texas' improper and prejudicial closing argument which Appellant characterizes as "completely inappropriate and childish" and "an embarrassment to the legal dignity of the Court."

Specifically, Appellant complains of the following statements made by the prosecutor:

Mr. Callan:   Thank you, Your Honor.   Ladies and gentlemen of the jury, I am going to propose to you something that may sound shocking.   And in most other cases that I have tried it is completely out of place and that is this:   You are not having to deal with one thing, you are having to deal with two things.   You are having to decide whether or not he committed this crime.   And you are having to deal with an affront to justice.   And that affront to justice is his testimony.   His testimony was a lie.   That's perjury.   That's another crime.   That is how brazen he is.

.                    .                    .

Walt Disney could have gotten up here and told a better story.   He could have gotten up here and said, I was at my Aunt – oh, let's pick a name – Annette Funicello's house, who is really my cousin.   And we were there – I was eating pizza there with Peter.   And then we decided to go to a party and we were going to go with Mauro and so my aunt told me goodbye.   Cross-examination, Well, how did she tell you goodbye?   Well, she said, Now, it's time to say goodbye to all our family.   G-A-B-R-I-E-L G-O-M-E-Z.   (Mr. Callan singing).

Goodbye, Gabrial Gomez.   Don't stay out too late.   Come back early. So he takes off to his party with Peter.   Well, Mr. Gomez, Who is Peter?   Well, he is a leader.   No.   No.   What is his last name?   I think it's Pan.   Peter Pan. Well, what is he?   He is a leader.   Well, who is he the leader of?   The Lost Boys.   Are you a lost boy?   No, I am the Lost Boy.

.                    .                    .

Well, who was there?   Well, there was a lot of guys there.   Well, what kind of guys were there.   Well, there was Bashful, Doc, Dopey, Grumpy, Happy, and there was Sleepy.   Well, what are their last names?   I don't know.   I don't know.

.                    .                    .

Well, can you describe them?   They are dwarfs.   But you don't know their last names and you don't know where they live?   No.   Well, did they see you at the party?   I don't know.   Well, what about Sleepy, did he see you?   No, he was asleep.   What about Sneezy?   No, he is sick all the time.   Well, why didn't you call him to testify?   Well, I couldn't find him and he was probably sick anyways so he couldn't come to court.

Well, who else was there?   Well, Dopey was there.   What is Dopey's last name?   I don't know.   Well, did he see anything?   I don't think so.   You know, Dopey, he dopes.   He was probably sky high and can't remember a thing.   What about Bashful?   Well, we didn't call him because he is shy and he probably wouldn't have been able to tell us anything because he is so shy.   He would have stage fright.

.                    .                    .

Well, who else?   Well, Doc was there.   Well, could Doc tell you what happened?   No, he was busy dispensing medication, prescription drugs out to all these guys.   Well, what was he giving out?   Rohypnol.   Well, why did he do that?   Because he wanted to make sure the guys had an edge.   Well, what do you mean?   Well, you know, Rohypnol, it's the date rape drug.   And there were all these good-looking women there.   And they need an edge to get the advantage.

Well, who were the good-looking women there?   Well, there was Bianca Nieves.   It was her quinceanera.   It was Snow White's quinceanera.   Well, did she see anything?   No, some old hag, some lady gave her apple [sic] and she fell asleep so but [sic] the time I got there, she was asleep.   Well, what other young girls were there?   Aurora.   Well, did she see anything?   No, she was asleep to [sic].   Well, what do you mean?   Well, she is Sleeping Beauty.   She sleeps all the time.   Well, who else was there?   Well, Ariel was there.   Well, did she see anything?   No, she was in the backyard in the pool.   She likes water.

That's his story ladies and gentlemen of the jury.   That's his story.

The prosecutor continued his closing argument by referring to a number of other fictional characters including Woody, Jessie, and Buzz.   At that point, defense counsel objected noting that while the prosecutor's argument was "all very entertaining," he was "arguing outside the record."   The trial court overruled the objection, and the prosecutor then referred to Space Rangers, Emperor Zurg, Mr. and Mrs. Potato Head, and Long Tall Sally.

Appellant argues, *inter alia,* that the State used its closing argument to place matters before the jury which were outside the record and "prejudicial to the accused" sufficient so as to deny him a fair trial. The State counters that Appellant's single objection to the prosecutor's comments was insufficient to preserve this issue for our review, that Appellant's multiple appellate complaints do not comport with the objection made at trial, and that the prosecutor did not improperly argue facts outside the record.

Generally, improper jury argument may be cured by an instruction to disregard, unless "in light of the record as a whole it was extreme or manifestly improper, violative of a mandatory statute, or injected new facts harmful to the accused." *Hawkins v. State*, 135 S.W.3d 72, 75 (Tex.Crim.App. 2004), *citing Cooks v. State*, 844 S.W.2d 697, 727 (Tex.Crim.App. 1992), *cert. denied*, 509 U.S. 927, 113 S.Ct. 3048, 125 L.Ed.2d 732 (1993).

To preserve error regarding improper jury argument, a party is required to continue to object each time improper jury argument is offered. *Dickerson v. State,* 866 S.W.2d 696, 699 (Tex.App.--Houston [1st Dist.] 1993, pet. ref'd). A defendant ordinarily should: (1) contemporaneously object to the statement; (2) request an instruction that the jury disregard the statement if the objection is sustained; and (3) move for a mistrial if the instruction is granted. *Cooks*, 844 S.W.2d at 727-28. However, while this sequence is not essential to preserve complaints for appellate review, the essential requirement is a timely, specific request that the trial court refuses. *Young v. State*, 137 S.W.3d 65, 69 (Tex.Crim.App. 2004). "[A]n event that could have been prevented by timely objection or cured by instruction to the jury will not lead an appellate court to reverse a judgment on an appeal by the party who did not request these lesser remedies in the trial court." *Young*, 137 S.W.3d at 70. Moreover, the appellate complaint

challenging the motion for mistrial must comport with the motion made at trial. *Broxton v. State*, 909 S.W.2d 912, 918 (Tex.Crim.App. 1995). The mistrial motion must be timely, that is, it must be made as soon as the grounds for the mistrial become apparent. *Griggs v. State*, 213 S.W.3d 923, 927 (Tex.Crim.App. 2007).

In determining whether the State engaged in improper jury argument, we consider the entire argument presented, not isolated sentences. *Rodriguez v. State*, 90 S.W.3d 340, 364 (Tex.App.--El Paso 2001, pet. ref'd). Generally, proper jury argument consists of: (1) summation of the evidence; (2) reasonable deductions from the evidence; (3) answer to argument of opposing counsel; and (4) a plea for law enforcement. *Jackson v. State,* 17 S.W.3d 664, 673 (Tex.Crim.App. 2000); *Morales v. State,* 11 S.W.3d 460, 463 (Tex.App.--El Paso 2000, pet. ref'd).

Here, counsel lodged a single objection to the complained of argument which was overruled by the trial court. Appellant did not request a running objection to the arguments made by the State. Further, counsel made no request for an instruction that the jury be ordered to disregard the prosecutor's statements, nor did he make a motion for mistrial. Under these circumstances, we cannot say that Appellant preserved this complaint sufficient for our review.

Had we determined that Appellant preserved this issue for review, we conclude, after considering the entire argument presented, that the prosecutor, however inartfully, was attempting to draw a comparison between the evidence offered by the State and the evidence offered by Appellant, in order to convince the jury that Appellant's version of the events was not believable or credible. Such arguments are proper. Issue Two is overruled.

In his final issue, Appellant claims that he was denied a fair trial because his counsel was

ineffective.    Appellant makes ten specific complaints regarding his counsel's conduct during the trial.    They are that:    (1) the trial court permitted Janet Nunez' identification testimony without the proper predicate over counsel's objection; (2) a metal pole was admitted into evidence without a proper chain of custody; (3) photographs of Michael Carrasco's vehicle were admitted into evidence without the proper predicate and identification; (4) 48 additional photographs were admitted into evidence without "proper review" or authentication; (5) 36 additional photographs were admitted into evidence without the proper predicate; (6) defense counsel waived opening statement at both the guilt/innocence and punishment phases of the trial; (7) defense counsel made a "short jury argument" at the guilt/innocence stage of the trial; (8) defense counsel failed to move for a directed verdict as to all counts in the indictment; (9) defense counsel failed to request an alibi instruction; and (10) defense counsel failed to move for a mistrial when a witness called by the State invoked her Fifth Amendment right not to testify during the course of her testimony in the punishment stage of the trial.

The standard for reviewing claims of ineffective assistance of counsel is the two-step analysis adopted by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).    In order to establish ineffective assistance of counsel, an appellant must prove that:    (1) his counsel's performance was deficient; and (2) he was prejudiced by the deficiency.    *Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.    If an appellant fails to satisfy his burden under the first *Strickland* prong, there is no need to address the second. *See Thompson v. State*, 9 S.W.3d 808, 813-14 (Tex.Crim.App. 1999).

Under the first prong of the *Strickland* analysis, counsel's performance is deficient when it falls below an objective standard of reasonableness.    *Thompson*, 9 S.W.3d at 812.    Appellate

-10-

review of trial counsel's conduct is highly deferential and presumes that counsel's actions fell within the wide range of reasonable professional assistance. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex.Crim.App. 2001). The burden of overcoming this presumption falls on the appellant. *Strickland*, 466 U.S. at 689, 104 S.Ct. at 2065. Any allegation of ineffectiveness must be firmly rooted and affirmatively demonstrated in the record to overcome this strong presumption. *Thompson*, 9 S.W.3d at 813; *Jackson v. State*, 877 S.W.2d 768, 771 (Tex.Crim.App. 1994). In the majority of instances, this task is extremely difficult because the record on direct appeal is simply undeveloped and cannot adequately reflect the deficiencies of trial counsel's performance. *Thompson*, 9 S.W.3d at 813-14.

As is the case in so many claims of ineffective assistance on direct appeal, we do not have the benefit of a record containing trial counsel's explanation for not pursuing the objections, motions and other matters in the manner Appellant now argues. As a consequence, we must presume that trial counsel had a reasonable professional basis for his decisions and actions, and that he acted within the range of reasonable professional assistance. *Thompson*, 9 S.W.3d at 814. Absent a developed record, our inquiry on direct appeal is limited to whether the challenged conduct was, "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex.Crim.App. 2005).

As noted above, Appellant contends that trial counsel's representation was constitutionally deficient in ten separate instances.

Appellant first complains that the trial court allowed Janet Nunez' to testify as to her identification of Appellant without the proper predicate being laid and over counsel's objection. Because Appellant's counsel did, in fact, object to the identification testimony at the time that it

was offered, his claim of ineffective assistance of counsel is not firmly found in the record. *See Lopez v. State,* 343 S.W.3d 137, 142 (Tex.Crim.App. 2011). We cannot conclude that his performance was deficient given that he made an objection to the proffered evidence and received a ruling from the trial court. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Next, Appellant argues that a "metal pole, the alleged weapon used in this case, was introduced by the State without any chain of custody." Although the argument is not particularly clear, given the objection lodged by trial counsel to this evidence, we presume that Appellant is arguing that the fact that the trial court's overruling of trial counsel's objection to the admission of the metal pole into evidence constituted ineffective assistance of counsel. Again, trial counsel objected to this evidence when it was offered, and as a result, Appellant's claim of ineffective assistance of counsel is not firmly found in the record. *See Lopez,* 343 S.W.3d at 142. Again, we cannot conclude that counsel's performance was deficient given that he made an objection to the proffered evidence and received a ruling from the trial court. *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.

Appellant's next three complaints relate to the admission into evidence of six photographs of Michael Carrasco's vehicle, as well as eighty-four crime scene and other photographs, without "proper" identification, review, authentication, and predicate and that their admission somehow constitutes ineffective assistance of counsel. First, counsel objected to the six photographs of Mr. Carrasco's vehicle arguing that the proper predicate had not been laid. The trial court overruled the objection. Accordingly, Appellant's claim of ineffective assistance of counsel is not firmly found in the record. *See Lopez,* 343 S.W.3d at 142. Further, we cannot conclude that counsel's performance was deficient given that he made an objection to the

-12-

proffered evidence and received a ruling from the trial court.  *See Strickland*, 466 U.S. at 687, 104 S.Ct. at 2064.   Appellant's trial counsel did not object to the 84 crime scene and other photographs, but it is well settled that defense counsel is not ineffective for failing to object to admissible evidence.  *See, e.g. Ex parte White,* 160 S.W.3d 46, 53 (Tex.Crim.App. 2004).   The officers' testimony as to all of the photographs, regardless of who may have actually taken them, was sufficient to authenticate them and establish the predicate for their admission into evidence. *See.* TEX.R.EVID. 901.   With respect to all of the photographs, both officers testified that each photograph accurately depicted that which it purported to show.   A witness who authenticates a photograph need not have been the actual photographer, nor even have been present when the photograph was taken.  *See Hughes v. State,* 878 S.W.2d 142, 155 (Tex.Crim.App. 1992)(op. on reh'g), *cert. denied*, 511 U.S. 1152, 114 S.Ct. 2184, 128 L.Ed.2d 902 (1994).   The record before us does not indicate why counsel failed to object to the photographs, and we can certainly envision many tactical reasons for his decision.   Because we find that the photographs were sufficiently authenticated and because Appellant has not established that they were otherwise inadmissible, he is unable to show any deficient performance by his trial counsel.  *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Next, Appellant complains that his trial counsel was ineffective because he waived opening statements at the beginning of both the guilt/innocence and punishment stages of the trial, and gave a short closing argument at the conclusion of the guilt/innocence stage.   Again, the record is silent as to the reasons why Appellant's trial counsel elected to waive opening statements and give a short closing argument.   However, such decisions are inherently strategic in nature, and there are many plausible reasons for waiving an opening statement or delivering a

-13-

brief closing argument.  *See Taylor v. State*, 947 S.W.2d 698, 704 (Tex.App.--Fort Worth 1997, pet. ref'd)(defendant failed to show ineffective assistance of counsel due to waiving opening statement where record was silent on direct appeal as to counsel's trial strategy).  Because we are unable to determine counsel's strategy on the basis of the record before us, Appellant is unable to show any deficient performance by his trial counsel as to these claims.  *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Appellant also argues that his counsel was ineffective for the reason that he failed to move for a directed verdict as to all counts in the indictment.  Once the State rested its case-in-chief, defense counsel moved for a directed verdict as to Count I of the indictment.  He did not move for a directed verdict as to Counts II and III.[1]  Counsel is not deficient for failing to move for a directed verdict if the State presents more than a scintilla of evidence to support a guilty verdict.  *See Wooster v. State,* 08-05-00177-CR, 2007 WL 2385925, at *6-7 (Tex.App.--El Paso Aug. 16, 2007, no pet.)(not designated for publication); *Gill v. State*, 111 S.W.3d 211, 217 (Tex.App.--Texarkana 2003, no pet.).  Here, given the testimony of Jorge Martinez himself, the State presented more than a scintilla of evidence to support a finding that Appellant stabbed Jorge Martinez with a knife as alleged in Paragraph A of Count II of the indictment.  *See Padilla v. State,* 254 S.W.3d 585, 590 (Tex.App.--Eastland 2008, pet. ref'd)(victim's testimony alone, if believed, is sufficient to support a conviction for aggravated assault with a deadly weapon).  Obviously, in light of the verdict, the jury believed

---

[1] Notwithstanding trial counsel's determination not to move for a directed verdict as to Counts II and III, the trial court, by virtue of its Charge of the Court, apparently granted counsel's motion for directed verdict as to Paragraph B of Count I and Paragraph B of Count II in that neither of those Paragraphs were submitted to the jury.

Mr. Martinez' testimony.[2]  As we have noted elsewhere in this opinion, because we are unable to determine counsel's strategy on the basis of the record before us, Appellant is unable to show any deficient performance by his trial counsel as to this claim.  *See Strickland,* 466 U.S. at 687, 104 S.Ct. at 2064.

Next, Appellant asserts that his counsel was ineffective when he failed to request and then failed to object to the absence of an instruction regarding Appellant's alibi. The Court of Criminal Appeals has addressed this issue, holding that a defendant is not entitled to an instruction regarding an alibi as such an instruction would constitute an improper comment on the weight of the evidence.  *See Giesberg v. State*, 984 S.W.2d 245, 250 (Tex.Crim.App. 1998), *cert. denied*, 525 U.S. 1147, 119 S.Ct. 1044, 143 L.Ed.2d 51 (1999).  Because Gomez was not entitled to an alibi instruction, he is unable to demonstrate any deficient performance by his counsel in not requesting such an instruction and in then failing to object to the trial court's not including such an instruction in the court's charge.  Given the jury's verdict, it is clear that they chose not to believe the evidence of alibi offered by Gomez.

Finally, Appellant argues that his counsel was ineffective when he failed to move for a mistrial when Amanda Dias, while being examined by the State during the punishment phase of the trial, invoked her Fifth Amendment right and elected not to answer any additional questions. The State called Ms. Dias to testify to extraneous conduct evidence that she had been assaulted by Gomez.  Once on the witness stand, Ms. Dias stated that she did not remember the incident. A 9-1-1 call made by Ms. Dias was played, but she was still unable to recall the incident.  On cross-examination, Ms. Dias told Appellant's counsel she was unable to recall the incident.  The

---

[2] Just as obviously, the jury apparently did not believe the testimony of Julianna Marquez given that a verdict of not guilty was returned as to Count III.  Any claim that counsel was ineffective because he did not move for a directed

State requested that the trial court declare Ms. Dias an adverse witness, and the court declined to do so. The trial court then appointed counsel for Ms. Dias, at which time she invoked her Fifth Amendment right and refused to answer any further questions. Appellant's counsel then objected to Ms. Dias' testimony on the grounds that he would not be able to cross-examine her on the issues raised in the 9-1-1 call, and moved to have the recording of the 9-1-1 call struck from the record. Appellant's counsel did not move for a mistrial or ask that Ms. Dias' testimony be stricken. As we have repeatedly noted herein, the record is silent as to why counsel did not move for a mistrial or why he elected not to move to strike Ms. Dias' testimony. There are any number of conceivable reasons for such strategic decisions during trial, including that counsel might have believed the testimony was not damaging because the witness was unable to recall the incident. *See Lopez*, 343 S.W.3d at 143-44 (appellate court should assume that counsel had a strategic reason for his actions if any reasonable strategic motivation can be imagined).

Appellant has failed to demonstrate how his counsel's actions fell outside the wide range of reasonable professional assistance. Whether or not counsel's decisions and actions were optimal is not for this Court to determine. We must only ask whether the conduct was "so outrageous that no competent attorney would have engaged in it" and in this case there is no basis for such a conclusion. *See Goodspeed*, 187 S.W.3d at 392. Accordingly, Appellant has failed to establish that counsel's performance was deficient under the first prong of the *Strickland* analysis, and it is unnecessary to address prejudice. *See Thompson*, 9 S.W.3d at 813-14. Issue Three is overruled.

## CONCLUSION

---

verdict as to Count III is moot in light of the verdict.

Having overruled each of Appellant's three issues, we affirm the trial court's judgment.


February 8, 2012

                                          CHRISTOPHER ANTCLIFF, Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.

(Do Not Publish)